## THE STATE v. PHILLIP P. YOUNG, Appellant.

### Division Two, May 28, 1926.

1. **INFORMATION: Official Oath.** An information based "upon the oath of office" of the prosecuting attorney and "upon his oath hereto appended" is sufficient, although it is not based upon the affidavit of a competent witness theretofore filed in the case.

2. ——: **In Peace of State.** An information charging that deceased "in the peace of the State there being" charges that deceased was "then and there being in the peace of the State."

3. ——: **Shooting at Deceased.** An information charging that defendant a certain revolving pistol "did discharge and shoot off, to, against and upon" deceased, and that defendant, "with the metal balls aforesaid, then and there by force of the gunpowder aforesaid" by the defendant "discharged and shot off as aforesaid, then and there . . . did strike, penetrate and wound him" the said deceased, charges that defendant discharged and shot off the revolving pistol at deceased; and an assignment, in the face of such allegations, that it does not charge that the pistol was discharged and shot off "at" deceased is without a semblance of merit, and an imposition on the court.

4. **SHERIFF: Disqualification.** Disqualifying the sheriff to summon a jury is, under the statute (Sec. 2342, R. S. 1919), a matter of discretion with the trial court, and unless there is some showing on appeal that the court in refusing to disqualify the sheriff abused the discretion the act will not be condemned.

State v. Young.

5. **HOMICIDE: Ruining Daughter: Statutory Rape.** Defendant's counsel having been permitted in his statement to the jury to tell them that defendant's fifteen-year-old daughter informed him that deceased was the father of her child, which she had named for him; that defendant believed her statements to be true, and was acting upon the belief that they were true when he shot deceased, the court did not err in refusing to permit counsel to state to the jury facts which would have disclosed to them that deceased was guilty of statutory rape upon the daughter, or in refusing to permit him to introduce evidence thereof. The defendant having shot deceased in the belief his daughter's statements were true, their truth or falsity was unimportant, and his subsequent act would have been the same whether deceased's act was or was not statutory rape.

6. **INCRIMINATION: Voluntary Statement to Prosecuting Attorney: Constitutional Right.** One charged with a crime cannot be compelled to give testimony against himself, but his constitutional right is not violated if his statement is voluntary; and the burden is not on the State to show, by evidence outside of the statement itself, that his written statement, made to the prosecuting attorney, in the presence of the sheriff, after his surrender, was voluntary, before it can be offered in evidence, where its statements are not contradicted or their truth denied. Where the evidence is undisputed that defendant shot and killed deceased, then on the same day voluntarily surrendered, went with the sheriff to the office of the prosecuting attorney, there made a statement which a stenographer took down in shorthand, and when it was transcribed he signed it, and it shows that he was fully informed of his rights and that no promises were made or coercion used, and in it he stated he shot deceased and fully explained why he did so, and at the trial he did not dispute the truth of the statements made therein, and neither the stenographer, sheriff, nor prosecuting attorney was called or requested to explain the statement or to contradict any part of it, the statement was voluntary, and no error was committed in admitting it in evidence without any other proof of its voluntary character than such facts.

7. **INSTRUCTION: Reference to Others.** An instruction on murder in the second degree is not erroneous because it refers to another for a proper definition of such words as "wilfully, premeditatedly and with malice aforethought, without deliberation."

8. ——**: Right to Arrest Deceased.** An instruction for the State telling the jury that defendant, as city marshal, had a right to arrest deceased without a warrant, if he had probable cause to believe and did believe deceased had committed a felony, properly declares the law, but it is one for the benefit of defendant, and therefore he sus-

tains no injury from the giving of it, although under the facts of the case he is not entitled to an instruction on the subject.

9. ———: **Murder in First Degree.** There being abundant substantial evidence on which to base an instruction on murder in the first degree, a defendant who is convicted of murder in the second degree cannot complain that such an instruction was given.

10. ———: **Manslaughter: Provocation.** Where deceased made no manifestation of violence towards defendant, and it is manifest that defendant did not shoot deceased in self-defense or in an effort to arrest him for having committed a felony, but shot him solely because deceased had ruined his daughter and in an attempt to punish him, there was no evidence of a provocation reducing the homicide from murder to manslaughter, and the trial court properly refused a requested instruction on manslaughter.

Corpus Juris-Cyc. References: Criminal Law, 16 C. J., Section 1512, p. 734, n. 20; Section 2361, p. 967, n. 89; 17 C. J., Section 3461, p. 169, n. 2. Homicide, 30 C. J., Section 283, p. 97, n. 19; Section 291, p. 103 n. 13; Section 457, p. 225, n. 99; Section 617, p. 366, n. 97; Section 651, p. 405, n. 4; Section 653, p. 406, n. 17; Section 712, p. 446, n. 36. Indictment and Information, 31 C. J., Section 143, p. 633, n. 8. Juries, 35 C. J., Section 241, p. 278, n. 79.

Appeal from Audrain Circuit Court.—*Hon. Ernest S. Gantt,* Judge.

AFFIRMED.

*Clarence A. Barnes* for appellant.

(1) The court erred in overruling defendant's motion to quash the information. (a) It does not appear to have been based upon the affidavit of Lillian Kumbera theretofore filed in the case. R. S. 1919, sec. 3850. (b) It does not charge that Joe Kumbera was then and there being in the peace of the State. 1 Bishop's New Crim. Procedure, secs. 407-414. (c) It does not charge that defendant did discharge and shoot off the revolving pistol at Kumbera. State v. Burns, 286 Mo. 665; State v. Moore, 235 S. W. 1056. (2) The court erred in not disqualifying the Honorable Sheriff of Audrain County from acting in this case and in summoning the jury after defendant filed his affidavit of disqualification. R. S. 1919, sec. 2342. (3) The court erred in not permitting defendant's at-

torney in his opening statement to state facts that would have disclosed that the deceased was guilty of statutory rape upon defendant's daughter, and to introduce evidence thereof. State v. Whitley, 183 S. W. 317. (4) The court erred in permitting the State to introduce in evidence the so-called statement made by defendant to the prosecuting attorney while in his office and in custody of the sheriff, in that it compelled him to testify against himself in a criminal cause, and the burden was on the State to show by evidence outside of the statement itself that it was voluntarily made by defendant after he had been advised it could and would be used against him, in violation of Sec. 23, Article 2, Constitution of Missouri. State v. Young, 119 Mo. 495; State v. Naughton, 221 Mo. 398; State v. Lehman, 175 Mo. 619; State v. Blackburn, 273 Mo. 469; Ex parte Gauss, 223 Mo. 277; Ex parte Carter, 166 Mo. 604; State ex rel. Orr v. Kearns, 304 Mo. 685; In Matter of M. T. January, 295 Mo. 653. (5) State's Instruction 5, improperly connects and refers to Instruction 3, and directs the jury to find defendant guilty of murder in the second degree if they fail to find him guilty of murder in the first degree. And before this instruction can even be considered, the jury were required to acquit the defendant of murder in the first degree. It thereby prejudiced the defendant before the jury, tended to a compromise of his rights, and deprived him of the presumption of innocence as against the charge of murder in both degrees. (6) The State's instruction improperly declares the law, in that it required the defendant as an officer to have probable cause to believe Kumbera had committed a felony, and in addition to having probable cause to believe and did believe he was guilty of the crime of rape upon Lena Young. It was only necessary for the officer to suspect that a felony has been committed by the party he seeks to arrest without warrant. 1 Bishop's New Crim. Procedure, p. 101, secs. 181, 182; State v. Underwood, 75 Mo. 230; State v. Whitely, 183 S. W. 317; State v. Cush-

enberry, 157 Mo. 168; State v. Moore, 235 S. W. 1056; State v. Dunivan, 269 S. W. 415. It misled the jury further by implying that he did not believe his daughter as to the parentage of her child. It is an indirect comment on the evidence pertaining thereto. (7) The instructions submitting the charge of murder in the first degree should not have been given under the evidence in this case, and it prejudiced defendant before the jury. State v. Moore, 235 S. W. 1056. (8) The court erred in refusing to instruct the jury upon the offence of manslaughter and in refusing to give defendant's instruction numbered 6A. State v. Grugin, 147 Mo. 39; State v. Connor, 252 S. W. 793; State v. Curtis, 70 Mo. 594; State v. Stewart, 278 Mo. 177; State v. Conley, 255 Mo. 185; State v. Bunell, 252 S. W. 709.

*North T. Gentry,* Attorney-General, and *James A. Potter,* Assistant Attorney-General, for respondent.

(1) The court did not err in overruling defendant's motion to quash the information. Section 3849, R. S. 1919, requires all informations to be signed and filed by the prosecuting attorney, and to be verified by his oath or by the oath of some person competent to testify as a witness in the case, or be supported by the affidavit of such person. (a) Under this statute it is optional with the prosecuting attorney whether the information shall be based upon the affidavit of a private individual or upon his own information and belief. Sec. 3849, R. S. 1919. (b) The information alleged that the deceased was "in the peace of the State" at the time he was murdered. (c) It was not necessary that the information allege that the defendant shot off the revolving pistol "at" the deceased. The information charges that the defendant did "discharge and shoot off, to, against and upon said Joe Kumbera." The indictment would have been good even though none of these last words had been included. State v. Rasco, 239 Mo. 535; State v. Stewart, 274 Mo. 649. (2) There is no showing that any of the jurors were summoned

by the sheriff personally, neither is there any intimation in the record that any of the jurors summoned were biased or prejudiced, nor that the defendant suffered any injury from the court's refusal to disqualify the sheriff. (3) The court did not err in refusing to permit defendant's attorney in his opening statement to state facts that would have disclosed that the deceased was guilty of rape upon defendant's daughter. State v. Stewart, 274 Mo. 649. The defendant was permitted to show what his daughter told him in regard to her conduct with the deceased. The truth or falsity of her statement was unimportant if defendant believed her statement to be true. The conduct of the defendant would necessarily have been the same, if he believed his daughter's statement, whether such statement was true or false. (4) The court committed no error in allowing the State to introduce the voluntary written statement made by the defendant shortly after he surrendered to the sheriff. The sole objections to the introduction of the confession was that it was obtained without advising the defendant that he was not compelled to make the statement, and that he was entitled to counsel if he desired counsel. "Confessions elicited by questions put to a prisoner by an officer or private person are admissible." State v. Stebbins, 188 Mo. 387; State v. Barrington, 198 Mo. 23. It is not necessary that the defendant be warned that his statements would be used against him. State v. Church, 199 Mo. 605. There was no claim that the confession of the defendant was obtained through force, violence, threats, tricks or promises of any kind, and since no valid objection was made to the confession it was not necessary for the court to take any evidence to determine whether the confession was admissible. (5) Instruction number six was not erroneous. State v. Crump, 267 S. W. 822; State v. Moore, 235 S. W. 1058. (6) The court did not err in refusing to give an instruction on manslaughter. State v. Borders, 199 S. W. 83; State v. Stewart, 278 Mo. 177

RAILEY, C.—On November 19, 1924, the Prosecuting Attorney of Audrain County, Missouri, filed in the circuit court of said county an information, which, without caption, reads as follows:

"Frank Hollingsworth, Prosecuting Attorney within and for the County of Audrain and State of Missouri, upon his oath of office and his oath hereto appended, informs the court that at and in the County of Audrain and State of Missouri, on or about the 8th day of September A. D., 1924, one Phillip P. Young, in and upon one Joe Kumbera, in the peace of the State there being, feloniously, wilfully, deliberately, premeditatedly and of his malice aforethought, did make an assault, and that the said Phillip P. Young, a certain revolving pistol then and there loaded and charged with gunpowder and metal balls, which said revolving pistol, he, the said Phillip P. Young, in his hands then and there had and held, then and there feloniously, wilfully, deliberately, premeditatedly and of his malice aforethought did discharge and shoot off, to, against and upon the said Joe Kumbera, and that the said Phillip P. Young, with the metal balls aforesaid, out of the revolving pistol aforesaid, then and there by force of the gunpowder aforesaid, by the said Phillip P. Young, discharged and shot off as aforesaid, then and there feloniously, wilfully, deliberately, premeditatedly and of his malice aforethought, did strike, penetrate and wound him, the said Joe Kumbera, giving to him, the said Joe Kumbera, in and upon the left breast of him, the said Joe Kumbera, one mortal wound of the depth of about ten inches and the breadth of about one-half inch, of which mortal wound he, the said Joe Kumbera, at the County of Audrain and State of Missouri, on the 8th day of September A. D., 1924, then and there instantly died; and so the prosecuting attorney aforesaid, upon his oath aforesaid, doth charge and say that the said Phillip P. Young, him, the said Joe Kumbera, then and there by the means aforesaid, at and in the County of Audrain and State of Missouri, on the date aforesaid, feloniously, wilfully, de-

liberately, premeditatedly and of his malice aforethought did kill and murder; against the peace and dignity of the State.''

On December 13, 1924, defendant was arraigned and entered a plea of not guilty. He was tried before a jury and on December 17, 1924, the following verdict was returned:

''We, the Jury, find the defendant guilty of murder in the second degree and we assess his punishment at imprisonment in the State Penitentiary for a term of ten years.''

Thereafter, on the 20th day of December, 1924, defendant filed his motion for a new trial, and on the 23rd day of December, 1924, filed his motion in arrest of judgment. Both motions were overruled on the date last mentioned. On December 23, 1924, allocution was granted defendant, judgment rendered and sentence pronounced in conformity with the verdict aforesaid. The case was duly appealed to this court, a bill of exceptions filed in the circuit court of said county on December 9, 1925, and a complete record and transcript filed in this court on December 15, 1925.

The testimony on the part of the State is fairly and accurately stated by counsel for respondent, as follows:

''The evidence for the State and for the defendant is short. Not a single witness was impeached, nor is the testimony of any witness contradicted by the testimony of any other witness or by any physical fact in the case. The sole defense is 'the unwritten law,' entirely disconnected from any plea of accident (excusable homicide), self-defense (justifiable homicide), or lawful provocation (that is, any personal act of violence by the deceased toward the defendant).

''The defendant was shown to be a section hand on the railroad at Martinsburg. He was also the city marshal of Martinsburg. He was a married man and the father of three daughters, the oldest, named Lena, being sixteen years old at the time of the tragedy. The evidence shows that some two months before the tragedy

the defendant was informed that his daughter Lena had been guilty of immoral conduct. The defendant thereupon questioned his daughter, but she denied the charges, and nothing more was said or done in regard to the matter by the defendant. About September 1, 1924, defendant's daughter Lena went to Mexico, Missouri, for the ostensible purpose of attending high school. She secured employment as a house servant in the family of one Dr. Moore at Mexico. Early in the morning of September 7, 1924, she became violently ill. Dr. Williams was summoned and had her immediately transferred to the Audrain County Hospital, where she gave birth to a child some two hours later. Dr. Moore notified defendant at Martinsburg and requested him to come to Mexico, which he did, arriving in Mexico about noon of that day. He visited his daughter at the Audrain County Hospital and was told by her that the deceased, Joe Kumbera, was the father of her child. The appellant left Mexico, Missouri, for home about two-thirty in the afternoon and arrived home about four o'clock. The evidence is silent as to what he did during the remainder of that day. On the morning of September 8, 1924, the appellant arose about six o'clock. He lived a short distance north of the home of Joe Kumbera. Kumbera lived in a house facing west on one of the principal streets of Martinsburg, his home being the first house south of the railroad tracks and about one short block north of the business district of the town. The defendant lived north of the railroad tracks and north of the Kumbera home, the exact distance not being shown in the evidence. Kumbera was engaged in the garage business, his garage being located some two blocks southwest of his home. Somewhere between 6:45 and seven A. M. Kumbera started from his home to his garage. When he had reached the sidewalk on the west side of the street running north and south in front of his home he was 'hailed' by defendant. He stopped and was in the act of rolling and lighting a cigarette when the defendant approached him. No one heard the conversation between them. The conversation which

took place is detailed in a written statement of the defendant, made some two hours later to the prosecuting attorney of Audrain County. In this statement the defendant, in answer to the following questions of the prosecuting attorney, said:

"Q. Now when you got up toward him what did you say or he say? A. I don't remember what he said.

"Q. You said a while ago that you said something in effect that 'I have a good notion to kill you, you ruined my daughter?' A. I believe I did say, I says 'I have a notion to just kill you because you ruined my daughter,' or something like that.

"Q. What did he say then ? A. He didn't say nothing.

"Q. Did he advance towards you? A. No, sir.

"Q. Did he make any move towards you? A. No, sir.

"Q. When you said that how close were you to him? A. Well, I was something like five or six or seven feet.

"Q. Five or six or what? A. Five or six or seven feet.

"Q. What did you do then? A. I just reached in my pocket like that (indicating) and pulled the trigger; just took the gun from my pocket and pulled the trigger.

"In answer to certain questions by the prosecuting attorney which were asked for the purpose of finding out why the defendant carried a gun on the morning of the tragedy he made the following explanation:

"Q. But ordinarily you wouldn't have carried it on a day like today? A. No, sir.

"Q. Now, the fact is that you expected to have trouble with Cumbraugh, isn't that it. Is that it, Mr. Young? A. I don't know.

"Q. You wouldn't say? A. No, sir.

"Q. Well, you were very angry at Cumbraugh, that is true, he had ruined your daughter ? A. Yes, sir.

"Q. And if you saw him did you intend to shoot him if you saw him?" A. No, that wasn't my intention when I left home.

"Q. That wasn't your intention? A. No, sir. My intention when I left home was to bring him up here as a prisoner.

"Q. That was your intention? A. Yes, sir.

"Q. But when you saw him your anger got the better of you and you shot him? A. Yes, sir.

"In addition to the above testimony of the defendant the State offered four witnesses who saw most of the tragedy. One witness testified that he was seventy-eight steps south of the place where the murder occurred; that he was in plain view of the defendant and the deceased; that he heard the defendant halt the deceased; saw the deceased stop, and saw the defendant approach the deceased, but heard no part of their conversation thereafter. As the witness walked across the street and while looking down at his feet he heard a shot, and looking up saw the defendant shooting at the deceased. He also saw the deceased throw up his hands and exclaim, 'My God, I'm shot,' or words to that effect. He saw the deceased running towards his home and saw defendant continue to shoot at the deceased.

"Another witness for the State who was located about one hundred feet further south, heard the first shot, and, looking in the direction of the defendant and deceased, saw the defendant continue to fire at the deceased as he ran towards his home.

"Another witness for the State who was in the post office three or four hundred feet south of the place of the tragedy heard the shot and ran to the front door of the post office in time to see the last shot fired.

"Another witness for the State who was located at an elevator a block or two southwest of the place of the tragedy saw all that happened after the first shot was fired, and corroborated the other witnesses for the State on what happened thereafter.

"Dr. Arnold, who examined the deceased a few minutes after he was shot, testified that deceased was shot through the heart. He further testified that he saw the defendant shortly after the tragedy and asked him what caused the tragedy, to which the appellant replied: 'The son of a —— ruined my daughter and I killed him.'

"Counsel for defendant in his opening statement to the jury explained the tragedy in the following words, which explanation was corroborated by the voluntary confession of the defendant.

" ' . . . On Monday morning between half past six and seven o'clock Phillip P. Young, as an officer of the city of Martinsburg, went down with the idea in his mind that he would arrest Joseph Kumbera and when he crossed this railroad track going south he saw Kumbera and called, "Joe," and Kumbera stopped and turned around, and Young walked up to him, and he said to him, "You have ruined my daughter," or "You have ruined my family." Kumbera wanted to know what he was going to do about it, in language that the evidence will disclose, and then the impulse that was in the breast of Phillip Young got the best of him. He said, "I have a mind to shoot you," or something like that, and Kumbera went up with his hands, I think the evidence will show that he carried—had one suit of clothes underneath overalls with a high bib to it, and under the impulse pulled the trigger, for both reasons.'

"The evidence showed that the deceased was unarmed at the time of the tragedy, and that he made no demonstration of violence toward the defendant. The evidence fails to disclose that the deceased uttered a single word before he was shot."

The defendant did not testify as a witness in the case, but produced eight or ten witnesses who testified that his reputation for truth and veracity, morality and good citizenship was good, prior to the tragedy. The defendant offered other testimony, which was excluded by the court, but in order to avoid repetition, we will con-

sider the same in connection with the instructions and rulings of the court, in the opinion to follow.

I. Appellant in his brief charges the court with error in overruling his motion to quash the information, for the alleged reason that the latter "does not appear to have been based upon the affidavit of Lillian Kumbera theretofore filed in the case." The information is heretofore set out and speaks for itself.

**Information.**

Section 3849, Revised Statutes 1919, reads as follows:

"Informations may be filed by the prosecuting attorney as informant during term time, or with the clerk in vacation, of the court having jurisdiction of the offense specified therein. All informations shall be signed by the prosecuting attorney and be verified by his oath or by the oath of some person competent to testify as a witness in the case, or be supported by the affidavit of such person, which shall be filed with the information; the verification by the prosecuting attorney may be upon information and belief. The names of the witnesses for the prosecution must be indorsed on the information, in like manner and subject to the same restrictions as required in case of indictments."

We are of the opinion, that the information herein fully informed defendant of the charge which he was required to meet, and that the above contention is without merit. [State v. Lee, 303 Mo. l. c. 251, 259 S. W. l. c. 800.]

(a) It is contended that the information is defective because: "It does not charge that Joe Kumbera was then and there being in the peace of the State." The information charges that "on or about the 8th day of September A. D. 1924, one Phillip P. Young, in and upon one Joe Kumbera, *in the peace of the State there being,* feloniously, wilfully, deliberately, premeditatedly and of his malice aforethought did make an assault,"

etc. (Italics ours.) The above contention is without foundation and devoid of the slightest merit.

(b) It is contended that the information is defective because: "It does not charge that defendant did discharge and shoot off the revolving pistol at ·Joe Kumbera." The information charges that defendant, a certain revolving pistol, etc., "then and there feloniously, wilfully, deliberately, premeditatedly and of his malice aforethought did *discharge and shoot* off,· to, against and upon the said Joe Kumbera, . . . and that the said Phillip P. Young, with the metal balls aforesaid, then and there by force of the gunpowder aforesaid, by the said Phillip P. Young discharged and shot off as aforesaid, then and there feloniously, wilfully, deliberately, premeditatedly and of his malice aforethought, did strike, penetrate and wound him, ·the said Joe Kumbera," etc. (Italics ours.)

The authorities cited by appellant, in support of said assignment, do not sustain his contention.

In passing, we think the foregoing assignments are an imposition on the court, in compelling us to consider matters without the semblance of merit.

II. It is charged that the "court erred in not disqualifying the Honorable Sheriff of Audrain County from acting in this case and in summoning the jury after

Sheriff:·
Disqualification.
defendant filed his affidavit of disqualification." We are cited, in support of this contention, to Section 2342, Revised Statutes 1919, relating to civil practice, which reads as follows:

"Where there is no sheriff or other ministerial officer qualified to act, or where they are interested or prejudiced, the court, or clerk thereof in vacation, may appoint one or more persons to execute its process and perform any other duty of such officer, who shall· be entitled to such fees for their services in each cause as are allowed by law to sheriffs in like cases."

314 Mo.—40.

It has long been the settled law of this court, that the disqualification of the sheriff under this section is a matter of discretion with the court, and unless there is some showing that the discretion exercised was arbitrary and unjust, the action of the court will not be overruled. [State v. Stewart, 274 Mo. l. c. 656; State v. Jeffries, 210 Mo. l. c. 323; State v. Hunter, 181 Mo. l. c. 333; State v. Lanahan, 144 Mo. l. c. 38; State v. Hultz, 106 Mo. l. c. 49.] There is nothing in the record to indicate that any of the jurors were summoned by the sheriff *personally,* or that his deputy was directed to summon any particular juror. It does not appear that any of the jurors summoned were biased or prejudiced, nor that defendant suffered any injury from the court's refusal to disqualify the sheriff. This contention lacks merit and is overruled.

III. It is insisted that the court erred in not permitting defendant's attorney in his opening statement to state to the jury facts which would have disclosed to the jury that deceased was guilty of statutory rape upon defendant's daughter, and to introduce evidence thereof.

**Statutory Rape.**

The court permitted defendant's counsel in his statement, to tell the jury that defendant's daughter was employed at Mexico, Missouri, by Doctor Moore; that on September 7, 1924, she became sick, was taken to the hospital, gave birth to a child, which she named "Joseph," for deceased; that she informed her father, when he arrived in Mexico, that Joseph Kumbera was the father of her child; that some one asked defendant why he shot Kumbera, and the latter replied: "He ruined my family;" that some one else asked the same question and defendant answered: "He ruined my daughter." In other words, counsel for appellant was permitted to tell the jury that defendant's daughter informed him, that Joseph Kumbera was the father of her child which she had named after him; that defendant believed such statement of his daughter to be true, and was acting upon

this theory when he shot and killed Kumbera. The truth or falsity of the daughter's statement to the father was unimportant, if the father believed her statement to be true. The subsequent acts and conduct of appellant would necessarily have been the same—if he *believed* his daughter's statement to be true—whether it was actually true or false. The court, therefore, committed no error in refusing to permit defendant's counsel to argue before the jury that Joseph Kumbera was in fact the father of said child, although counsel was permitted to argue, that defendant, in killing deceased, acted upon the belief that his daughter's statements to him were true. [State v. Stewart, 274 Mo. 1. c. 659 and following.] This assignment of error is likewise overruled.

IV. Under IV of appellants brief, it is said: "The court erred in permitting the State to introduce in evidence the so-called statement made by defendant to the prosecuting attorney while in his office in custody of the sheriff, in that it compelled him to testify against himself in a criminal cause, and the burden was on the State to show by evidence outside of the statement itself that it was voluntarily made by defendant after he had been advised it could and would be used against him, in violation of Section 23 of Article 2 of the Constitution of Missouri."

*Incrimination.*

In support of above contention appellant has cited a number of Missouri cases, in which it is held that a man charged with a crime cannot be compelled to give testimony against himself. The principle announced in the above cases is stated in the case of "In Matter of M. T. January," 295 Mo. 1. c. 653, where Mr. January was hailed before the grand jury of Vernon County, Missouri, as a witness, and was asked whether he had purchased any intoxicating liquor within twelve months. He declined to answer the question on the ground that his answer might incriminate him. This court, on *habeas corpus* proceeding, held he was not bound to answer the question. The other cases cited deal with like prin-

ciples and have no application to a voluntary statement like the one before us.

On September 8, 1924, defendant voluntarily surrendered to the Sheriff of Audrain County, Missouri. The evidence is undisputed that, on the morning of said last-mentioned date, the defendant shot and killed Joe Kumbera of Martinsburg, Missouri. After surrendering, the defendant, the sheriff, the court stenographer, Mr. Noel, and the prosecuting attorney of said county, were at the office of the latter, where said stenographer correctly took down the statement of defendant, in the presence of said witnesses, transcribed the same, read it over to defendant, and the latter signed the same in the presence of said witnesses.

Here is what occurred between the prosecuting attorney and defendant, as shown in said statement:

"Q. Now, you have volunteered to make a statement as to how this happened? A. Yes, sir.

"Q. You shot a man last night? A. This morning.

"Q. This morning? A. Yes, sir." . . .

Said statement continues as follows:

"Q. I have made no promise to you of any leniency or clemency? A. No.

"Q. You understand I have promised you nothing? A. Yes, nothing.

"Q. And you haven't been put in fear? A. No.

"Q. Or threatened in any way, have you? A. No, sir.

"Q. You voluntarily came here and surrendered yourself? A. Yes, sir.

"Q. You know that I am the prosecuting attorney of the county? A. Yes, sir."

The defendant had been marshal of Martinsburg for several years, and must have understood what he was doing. It is not claimed by his counsel that any part of the statement is untrue. Appellant was presumably in court when the above statement was offered in evidence. He did not take the stand and explain, or con-

tradict, any part of said statement. The sheriff, prosecuting attorney and stenographer were in court, and none of them was called or requested to explain said statement, or to contradict any part thereof. The statement was not only voluntarily made, but the facts stated therein are uncontradicted. We are of the opinion, that said statement was voluntary, and that the court committed no error, on the facts before us, in admitting the same in evidence. [State v. Midkiff, 278 S. W. l. c. 683; State v. Baker, 278 S. W. l. c. 989; State v. Ball, 262 S. W. l. c. 1046; State v. Hayes, 247 S. W. l. c. 168; State v. Reich, 239 S. W. l. c. 837; State v. Hart, 292 Mo. 74, 89, 237 S. W. 473-477; State v. McNeal, 237 S. W. l. c. 741; State v. Lee, 231 S. W. l. c. 622; State v. Thomas, 250 Mo. l. c. 211, 157 S. W. 330; State v. Brooks, 220 Mo. l. c. 83, 119 S. W. 353; State v. Armstrong, 203 Mo. l. c. 558, 102 S. W. 503; State v. Spaugh, 200 Mo. l. c. 596, 98 S. W. 55; State v. Barrington, 198 Mo. l. c. 109-110; State v. Stebbins, 188 Mo. l. c. 397; State v. Jones, 171 Mo. l. c. 405-6; State v. Meyers, 99 Mo. l. c. 119; State v. Hopkirk, 84 Mo. 278; State v. Patterson, 73 Mo. 695.]

V. Under Proposition V of his brief, it is claimed by appellant that the ''State's instruction numbered 5, improperly connects and refers to Instruction 3, and

**Reference to Another Instruction.** directs the jury to find defendant guilty of murder in the second degree, if they fail to find him guilty of murder in the first degree. And before this instruction can ever be considered, the jury were required to acquit the defendant of murder in the first degree. It thereby prejudiced the defendant before the jury, tended to a compromise of his rights, and deprived him of the presumption of innocence as against the charge of murder in both degrees.''

The above contention is trivial in its nature, and devoid of the slightest merit. As Instruction 5, complained of, refers to Instruction 3, for a *definition* of ''wil-

fully," "deliberately," "premeditatedly," etc., we here set out both Instructions 3 and 5, as follows:

"3. Murder in the first degree is the wrongful killing of a human being wilfully, deliberately, premeditatedly and with malice aforethought, as hereinafter more fully defined.

" 'Wilfully' as used in these instructions means intentionally, not accidentally.

. " 'Deliberately' means done in a cool state of the blood. It does not mean brooded over or reflected upon for a week, a day or an hour, but it means an intent to kill executed by the defendant in a cool state of the blood in furtherance of a formed design to gratify a feeling of revenge or to accomplish some other unlawful purpose, and not under the influence of a violent passion suddenly aroused by some lawful or just cause or provocation. If, therefore, in such state of mind the defendant formed a design to kill Joe Kumbera, it was deliberately done.

" 'Premeditatedly' means thought of beforehand for any length of time, however short.

" 'Malice' in its legal sense and as used in these instructions does not mean mere spite, ill-will, hatred or dislike, as it is ordinarily understood, but it means that condition of mind which prompts a person to intentionally take the life of another without just cause, justification or excuse, and signifies a state of disposition that shows a heart regardless of social duty and fatally bent on mischief.

" 'Malice aforethought' means malice with premeditation.

" 'Feloniously' means wickedly and against the admonition of the law.

"5. If you find the defendant not guilty of murder in the first degree, then you will consider whether or not, under the testimony in this case, of which you are the sole judges, the defendant is guilty of murder in the second degree.

"Murder in the second degree is the killing of a human being wilfully, premeditatedly and with malice aforethought, but without deliberation.

"Bearing in mind the definitions of these terms as set forth in Instruction No. 3, you are further instructed that if you find and believe from the evidence, beyond a reasonable doubt, that at the County of Audrain and State of Missouri, on the 8th day of September, 1924, the defendant, Phillip P. Young, did feloniously, wilfully, premeditatedly and with malice aforethought, but not deliberately, with a certain loaded pistol, and that the same was a dangerous and deadly weapon, shoot Joe Kumbera, then and there and thereby inflicting upon him, the said Joe Kumbera, a mortal wound, and that from said mortal wound, if any, the said Joe Kumbera within one year thereafter, to-wit, on said 8th day of September, 1924, died at the County of Audrain and State of Missouri, then you will find the defendant guilty of murder in the second degree and assess his punishment at imprisonment in the State Penitentiary for a term of not less than ten years."

It is not claimed that Instruction 2 improperly defines "wilfully," "deliberately," etc., nor is it charged that said instruction does not properly define murder in the first degree. Instruction 5 is complained of, because it refers to Instruction 3 for a proper definition of "wilfully," "premeditatedly," etc. What difference could it make to defendant, whether Instruction 5 called for a proper definition of said terms as defined in another instruction, or whether the definition of said terms was properly set out in said Instruction 5? It is manifest, that if Instruction 5 had properly defined the above terms without referring to Instruction 3, it would have been a valid instruction on murder in the second degree. It is no less valid, by reason of its reference to Instruction 3, for a correct definition of above terms.

We hold that said Instruction 5 properly declared the law. [Sec. 3232, R. S. 1919; State v. Crump, 274 S.

W. l. c. 69; State v. Emory, 246 S. W. l. c. 952; State v. Todd, 194 Mo. l. c. 394-5-6.]

VI. Appellant complains of Instruction 6, which informed the jury that defendant, as marshal, had the right to arrest deceased without a warrant, if he had probable cause to believe and did believe that deceased had committed a felony, etc. The instruction, as given, was for the benefit of defendant, and properly declared the law, if he was entitled to such an instruction under the facts in the case. In any event he sustained no injury on account of the giving of same. [State v. Moore, 235 S. W. l. c. 1058; State v. Crump, 267 S. W. 822.]

*Arrest.*

VII. The court is charged with error in giving to the jury an instruction on murder in the first degree. There was abundant substantial evidence on which to base said instruction, and as the jury returned a verdict for murder in the second degree, the defendant is in no position to complain of said instruction. [State v. Davis, 268 S. W. 44; State v. Lloyd, 263 S. W. l. c. 214; State v. Yates, 256 S. W. 809; State v. Baugh, 217 S. W. l. c. 280; State v. Porter, 276 Mo. 387, 207 S. W. 774; State v. Morehead, 271 Mo. 84, 195 S. W. 1043.]

*Murder in First Degree.*

VIII. The court is charged with error in refusing defendant's Instruction 6A, which reads: "The court instructs the jury that a provocation is deemed to be adequate, so as to reduce the offense from murder to manslaughter, whenever it is calculated to excite the passion beyond control. It must be of such a character as would, in the mind of the average just and reasonable man, stir resentment likely to cause violence endangering life, or as would naturally tend to disturb and obscure the reason and lead to action from passion rather than judgment, or to cre-

*Provocation: Manslaughter.*

ate anger, rage, sudden resentment, or terror, rendering the mind incapable of reflection.''

In other words, it is claimed that defendant was entitled to an instruction on manslaughter under the facts as disclosed in the record. It is undisputed that defendant shot Joe Kumbera several times with a pistol and killed him. He was marshal of Martinsburg at the time, and had the right to arrest deceased, if he had probable cause for believing and did believe that deceased had been guilty of a felony in having improper relations with his daughter. It is therefore important to determine from the evidence whether defendant killed deceased while acting as marshal in an effort to arrest him, or whether he shot him through *revenge,* under the belief that deceased had ruined his daughter.

In his voluntary statement defendant, in speaking of deceased, said: ''Q. Why did you shoot him? A. Because he ruined my daughter.'' This statement was made by defendant on the day of the tragedy. He stated therein, that he had heard about two months before that deceased had had sexual intercourse with his daughter. His brother-in-law, Wells, told him about it. He then went to see his daughter and she denied it. He learned from her after the birth of the child that deceased was the father of same, and thereafter killed him on the same or following day. When he came up to deceased he said, ''I have a notion to just kill you because you ruined my daughter.'' The statement continues as follows:

''Q. What did he say then? A. He didn't say nothing.

''Q. Did he advance toward you? A. No, sir.

''Q. Did he make any move toward you? A. No, sir.

''Q. When you said that how close were you to him? A. Well, I was something like five or six or seven feet.

''Q. Five or six or what? A. Five or six or seven feet.

"Q. What did you do then? A. I just reached in my pocket like that (indicating) and pulled the trigger; just took the gun from my pocket and pulled the trigger. . . .

"Q. How many times did you fire at him? A. I don't know whether it was four or five times.

"Q. Four or five? A. Yes, I took all the shells out.

"Q. You emptied your pistol, whatever it had in it? A. Yes.

"Q. Did he make any move towards you at all? A. No, sir.

"Q. As you were shooting at him what was he doing? A. He started getting away. . . .

"Q. He never at any time made any move towards you? A. No, sir. . . .

"Q. You shot him solely for the reason that he ruined your daughter? A. Yes, sir.

"Q. And not in the protection of yourself at all? A. No, sir.

"Q. He made no threat to you. Now, you have made this statement to me freely and voluntarily and of your own free will? A. Yes, sir."

After the shooting when asked by his neighbors why he shot deceased, he said because the latter had ruined his daughter.

Dr. Arnold, after the shooting, asked defendant what it meant. Appellant replied: "The son-of-a—— ruined my daughter and I killed him."

It appears from the evidence that deceased was unarmed at the time of the tragedy, and that he made no demonstration of violence toward the defendant. It is manifest from reading the record that defendant did not shoot deceased in an effort to arrest him, nor in self-defense. It conclusively appears that he shot Kumbera because he believed from his daughter's statement to him that deceased was the father of her child. On the record before us, we are of the opinion that defendant was not entitled to an instruction on manslaughter.

[State v. Crump, 267 S. W. 1. c. 828; State v. Stewart, 278 Mo. 1. c. 184 and cases cited; State v. Borders, 199 S. W. 1. c. 183.]

IX.  We have carefully examined the record, as well as all the points presented in the respective briefs, and do not find that any error was committed against appellant of which he can legally complain.  He got before the jury the fact that he was an officer, and as such had the right to arrest deceased, if he had probable cause, and did believe that a felony had been committed by him.  He was not, however, acting as an officer, or in self-defense when he killed deceased, but did so on the ground that he believed deceased was the father of his daughter's child, and was attempting to punish him therefor.  He was not legally justified in taking the life of deceased under such circumstances, and was fortunate in receiving the lowest verdict for murder in the second degree.  [State v. Welch, 278 S. W. 1. c. 758, and cases cited.]

Conclusion.

Appellant has received a fair and impartial trial before an unprejudiced jury.  He was convicted upon clear and convincing evidence which is practically uncontradicted.

The judgment below is accordingly affirmed.  *Higbee, C.,* concurs.

PER CURIAM:—The foregoing opinion of RAILEY, C., is adopted as the opinion of the court.  All of the judges concur.