**STATE of Missouri, Respondent,**

v.

**Theodore JACKSON, Appellant.**

No. 56574.

Supreme Court of Missouri,
En Banc.

June 11, 1973.

Rehearing Denied July 16, 1973.

John C. Danforth, Atty. Gen., Jefferson City, Charles B. Blackmar, Sp. Asst. Atty. Gen., St. Louis, for respondent.

Robert C. Babione, Public Defender Bureau, St. Louis, for appellant.

DONNELLY, Judge.

Appellant, Theodore Jackson, was convicted of murder in the second degree by a

1

jury in the Circuit Court of the City of St. Louis, Missouri, and his punishment was assessed at 15 years in the penitentiary. Following rendition of judgment and imposition of sentence, an appeal was perfected to this Court. The case was heard in Division Two of the Court and was then transferred to, and heard, in the Court en Banc.

■ Appellant's first point on appeal is that the trial court's instruction on murder in the second degree was erroneous "because it did not require the finding of a homicide which was done feloniously, willfully, premeditatedly and with malice aforethought." This instruction read in part as follows:

"If you find and believe from the evidence beyond a reasonable doubt:

"First, that on the 13th day of October, 1969, in the City of St. Louis, State of Missouri, the defendant caused the death of Annie Dale by shooting her, and "Second, that the defendant intended to take the life of Annie Dale, then you will find the defendant guilty of murder in the second degree.

"However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of the foregoing, then you must find the defendant not guilty of that offense."

The jurors in this case found that "the defendant caused the death of Annie Dale by shooting her, and * * * that the defendant intended to take the life of Annie Dale * * *." In our opinion, the jurors, in so finding, *necessarily* and *unavoidably* believed and found that the homicide "was done feloniously, willfully, premeditatedly, and with malice aforethought." Appellant's first contention is without merit.

Appellant's second point on appeal is that the trial court "should have instructed on the offense of manslaughter."

■ It is now well-established that unless we can declare as a matter of law that there is "an entire absence of evidence upon which to rest a verdict of guilty of manslaughter" (Sparf and Hansen v. United States, 156 U.S. 51, 64, 15 S.Ct. 273, 278, 39 L.Ed. 343), it is the duty of the trial court to give an instruction on manslaughter. State v. Ayers (Mo.) 470 S.W. 2d 534 (banc 1971).

Appellant was convicted of killing his common-law wife, Annie Dale Jackson, early the morning of October 13, 1969, in O'Fallon Park in the City of St. Louis.

Appellant testified in part as follows:

"Q All right. After Annie came back over to the car did you go someplace with her? A Yes, sir.

"Q Where was that you went? A O'Fallon Park.

"Q And do you know about what time you got there?

"A About a quarter to 1:00.

"Q And what did you do after you arrived there at the park?

"A Sat in the car and talked a while.

"Q All right. Did you do anything after that?

"A We made love.

"Q All right. Now, did you stay in front of the car or behind?

"A I was in the back of the car.

"Q And what happened after that?

"A Well, she talking about stereo mostly.

"Q Do you remember anything else you were talking about in particular at that time? A No, nothing else in particular.

"Q Now, you have seen the shotgun which has been marked as State's Exhibit No. 8. Do you recognize that gun? A Yes, I do.

"Q Was it there at that time in your car? Did you have it in your car that night? A Yes, sir.

"Q Where was it? A In the back seat.

"Q All right. Did you have any occasion to handle or did Annie have occasion to handle the gun? A I don't understand, sir.

"Q Well, did you use it or pick it up or did she pick it up at any time? A She picked it up and at the time she picked it up I picked it up.

"Q When was it she picked it up with reference to the time you would have to separate and after you would leave?

"A She said, 'After we separate I'd go to my mother.'

"Q And did you do anything with it? A No.

"Q Did you do anything or were you going to do anything with that?

"A No.

"Q Did it discharge at anytime later on?

"A Yes, it discharged right after she picked it up. And I grabbed it.

"Q How did that happen?

"A She went down and picked up the gun, and I grabbed it with my left hand to get it, and it discharged out the door. The door was open.

"Q Which door was that? A The left door.

"Q The driver's side? A Yes, sir.

"Q Was the window open or closed at that time?

"A The window was closed in the back. The door was open.

"Q And what were you going to do with the gun?

"A I was going to put it in the trunk.

"Q Now, after this first shot discharged out the door what did you do?

"A I started reaching in my pocket to get the key.

"Q What were you going to do with the gun? A Put it in the trunk of the car.

"Q And then what happened as you were making preparation to go and put it in the trunk?

"A She grabbed it, and I just about coming, and it went off in my stomach.

"Q Okay. Just how did you have hold of the gun when it started in your stomach?

"A I had one hand on this barrel like this, and reaching in my pocket, and I had a little key with a chain for the back of the car (indicating).

"Q And all you had hold of at that time was the barrel; is that right?

"A That's right.

"Q What do you remember happening after that time?

"A It discharged. I don't remember anything happen."

* * * * * *

"Q Now, on the night of October 13 did you use that gun, however, to shoot yourself in the stomach? A No, sir.

"Q Did you use it to shoot Annie Dale at anytime? A No, sir."

*Officer Sam Brooks testified in part as follows:*

"Directing your attention, Officer, to about 3:00 a. m., October 13, 1969, will you tell us where your duties took you?

"A They took me to O'Fallon Park.

"Q Will you tell us what to O'Fallon Park you went there for?

"A Investigate a shooting.

* * * * * *

**4**

"Q  Now, when you arrived at O'Fallon Park on the drive can you tell us what, if anything, unusual you found there?

"A  I observed a man laying on the street.

"Q  All right.  Will you tell us what his condition was?

"A  He had been shot in the stomach. There was a lot of blood and guts hanging out.

\*      \*      \*      \*      \*      \*

"Q  With reference to that automobile, officer, where was the body of this man located?

"A  Well, he was laying more or less in front of the automobile with his head to the direction of west and his feet to the east more or less in line with the bumper.

\*      \*      \*      \*      \*      \*

"Q  Will you tell us what you did?

"A  When we first got there and just as we pulled up I seen the person laying there.  I got out first because I didn't have to pull up and park and I approached that person laying on the street.

"Q  What did you do then?

"A  Then as I approached him I said, 'Oh, my God,' or something, and then he groaned.

"Q  He groaned.  And will you tell us if he said anything at that time or did you say anything?

"A  When I got next to him he said, 'I am going to die.'

"Q  All right.  And what did you say or do?

"A  I said, 'What happened?'  And then he told me.  He said—

"MR. BABIONE: I will object to what he said, in other words, to preserve my motion on the preliminary—

"THE COURT: Yes, you may do so and it will be overruled for the same reason as previously given.

"Q  (By Mr. White)  You may answer. What did he say?

"A  He said, 'I shot my wife and I shot myself over her mother.'

"Q  Okay.  Would you tell us what, if anything, you did at that point, officer? A I hollered at Mike this guy was still living and Mike was calling for help at that time.

"Q  On the radio in the cruiser?

"A  Right.  And then I went over toward the car, towards the parked automobile.

"Q  The parked automobile.  And what, if anything, did you observe then, Officer?

"A  I observed laying on the back floorboard a female.

"Q  You mean on the floor of the backseat?  A Yes.

"Q  Was she conscious?  A No, sir."

■  In State v. Clough, 327 Mo. 700, 705, 38 S.W.2d 36, 38 (1931), this Court said:

"The authorities are fairly harmonious in holding that, in order for a homicide to be reduced from murder to manslaughter, there must be a sudden unexpected assault, encounter, or provocation tending to excite the passion beyond control.  It is not the assault or the provocation alone that reduces the grade of the crime, but it is the sudden happening or occurrence of the provocation so as to render the mind incapable of reflection and obscure the reason so that the elements of malice and deliberation necessary to constitute murder are absent, and therefore the crime is not murder, but manslaughter."

On the record in this case, we hold that the trial court did not err in failing to instruct on manslaughter because there is no evidence which would support a reduction of the homicide from murder to manslaughter.

The judgment is affirmed.

FINCH, C. J., and MORGAN, HOLMAN and HENLEY, JJ., concur.

BARDGETT, J., dissents in separate dissenting opinion filed.

SEILER, J., dissents in separate dissenting opinion filed and concurs in separate dissenting opinion of BARDGETT, J.

BARDGETT, Judge (dissenting).

I respectfully dissent because I believe the second-degree murder instruction given in this case is prejudicially erroneous.

At a minimum, the definition of murder in the second degree is the intentional killing of a human being with premeditation and malice aforethought, § 559.020, RSMo 1969, V.A.M.S.; State v. Ayers, 470 S.W. 2d 534, 537 (Mo. banc 1971); State v. Jewell, 473 S.W.2d 734, 738 (Mo.1971). The majority opinion does not deviate from the long line of Missouri cases that uniformly hold malice aforethought and premeditation to be essential elements of this crime.

The basis of this dissent is that I believe the instruction that is given to the jury as the law of this State, and under which the jury must find defendant guilty or not guilty must inform the jury as to what it is they must find to be true in order to convict. The instruction on murder second degree in this case informs the jury that they must find the defendant intentionally killed the deceased but does not inform the jury that in order for the intentional killing to be murder in the second degree the defendant must have done it with malice aforethought and premeditation. These two essential elements can be submitted by their terms and defined or by definition alone, State v. Marston, 479 S.W.2d 481 (Mo.1972), but before the court says that the jurors believed and found that the homicide was done premediatedly and with malice aforethought, it ought to appear that the jurors were at least informed of the existence of these elements. Since the instant instruction makes no reference to premeditation and malice aforethought at all, I do not believe these concepts even crossed the jurors' minds in the course of their deliberations, much less that the jurors believed and found them to be present. I cannot presume the jury found something about which it was not even informed.

"Malice aforethought" and "premeditation" have a meaning in the law. In State v. Venable, 177 S.W. 308 (Mo.1915), the following instruction was given: "The court instructs the jury that the words 'on purpose' and 'of his malice aforethought' mean the intentional doing of a wrongful act without just cause or excuse." This instruction was held erroneous, the court saying: " 'Malice aforethought means malice with premeditation; that is, that the unlawful act intentionally done was determined upon before it was executed.' State v. Tettaton, 159 Mo. 354, loc. cit. 365, 60 S.W. 743, 746. 'Malice aforethought means that the act was done with malice and premeditation.' State v. Thomas, 78 Mo. 327, loc. cit. 339." 177 S.W. at 309.

State v. Venable, supra, was cited with approval in State v. Mathis, 427 S.W.2d 450 (Mo.1968) where the court, in reversing a conviction of felonious assault *with malice aforethought*, said: "An essential element is malice *aforethought* and the word 'aforethought' as here used means malice *with* premeditation. State v. Young, 314 Mo. 612, 286 S.W. 29, 34. Malice alone is not sufficient. See State v. Venable, Mo., 177 S.W. 308, where an instruction defining 'malice aforethought' as 'the intentional doing of a wrongful act without just cause or excuse' (a frequent definition of 'malice', see State v. Finnell, Mo., 280 S.W.2d 110, 113; State v. Ayers, Mo., 305 S.W.2d 484, 486) was held to be erroneous because 'malice aforethought' means 'malice with premeditation; that is, that the unlawful act intentionally done was determined upon before it was executed.' " 427 S.W.2d at 454.

In State v. Cooper, 71 Mo. 436 (1880), the court reversed and remanded a second-degree murder conviction for error in the giving of the following instruction: " 'If the jury believe from the evidence that the defendant willfully shot and killed William Grimes with a gun, and do not find that such killing was done with deliberation and premeditation, as those terms are defined in these instructions, then such killing would be murder in the second degree, unless the jury should find that the killing was justifiable.' " 71 Mo. at 440.

The court went on to say: "That deliberation and premeditation may be inferred from a willful killing, is a very different proposition from that asserted by this instruction, by which the jury were told in effect, that, although they might not find that there was premeditation or deliberation, yet if they found the killing to have been willful, that is, intentional, that dispensed with proof of all the other elements of murder. The jury was virtually told in that instruction, that an intentional killing, not excusable or justifiable, is murder of the second degree, although not found to have been committed with premeditation or deliberation. The instruction was manifestly erroneous and has no support in any case to be found in our reports. State v. Wieners, 66 Mo. [13] 14; State v. Curtis, 70 Mo. 594; State v. Foster announces no such doctrine as that contained in this instruction; 61 Mo. [549] 552." 71 Mo. at 440.

In each of the three cases noted above, the jury was required to find that the act was *intentionally* done. In the instant case, the jury was required to find that the homicide was *intentionally* done. The significance of the three cited cases is that a jury finding that the act was *intentionally* done does *not* mean that the jury found that the act was done with malice aforethought and premeditation. It was this very concept (a finding that an act was intentionally done does not necessarily mean that the jury found it was done with malice aforethought and premeditation) which

caused the court to reverse the convictions in each of the cited cases.

The definitions of "malice aforethought" and "premeditation" overlap. When malice aforethought is correctly defined, the definition includes premeditation. State v. Venable, supra; State v. Mathis, supra. Therefore, when malice aforethought is an element of a crime, the word "premeditation" becomes redundant. Malice aforethought is an essential element of murder in the second degree. It is, therefore, my opinion that the instruction to the jury in a murder second-degree case must include the concept of malice aforethought. This can be done by using the term "malice aforethought" and correctly defining it by including in the instruction the following, "that he did so with malice aforethought, that is, intentionally and without just cause or excuse *and after thinking about it* beforehand for any length of time". The element could be submitted to the jury without using the term "malice aforethought" by including as one of the jury findings that the defendant intentionally killed the deceased without just cause or excuse and after thinking about killing him beforehand for any length of time.

The element would be included within the instruction given in the instant case if paragraph second read as follows:

"Second, *that the defendant intended to* take the life of Annie Dale and did intentionally take her life without just cause or excuse and after thinking about this matter beforehand for any length of time, then you will find . . . ."

Query: Does the second-degree murder instruction in this case correctly define the crime in accordance with the definition of that crime as set forth in the principal opinion? The answer is obviously no; however, it must be noted that under this newer method of instructing jurors, there is no instruction given that *defines* the crime of murder. This is a departure from the traditional method of instructing

jurors in criminal cases and has been approved in State v. Marston, supra.

It would seem, therefore, that the instruction prepared according to the new method, and under which the jury can convict of a certain offense, must perform the function previously performed by both the definition instruction and the instruction requiring certain findings as a prerequisite to conviction.

The function of instructions is to transmit to the jury those legal propositions and essential factual issues which the law requires to be satisfied before a jury can return a verdict of guilty.

Two of the criteria against which the validity of an instruction must be judged are:

(1) Is it a correct statement of the law?

(2) Is it a complete statement?

In the instant case the questioned instruction permits the jury to convict without finding an element that the principal opinion holds to be essential to murder in the second degree—malice aforethought (malice with premeditation). The instruction, therefore, is not a correct statement of the law as that law is set forth in the principal opinion. The essential holding in State v. Cooper, supra, is that an intentional killing, without more, is simply not murder in the second degree and hence it was held erroneous there, and in my opinion it is error here to tell the jury that an intentional killing is, without more, murder in the second degree.

The questioned instruction is not a complete statement of the law because it does not require a finding of malice aforethought which, under the principal opinion, is essential to murder in the second degree.

In short, it is my opinion that the instruction in the instant case authorized a verdict of guilty of murder in the second degree contrary to the existing substantive law of this State by permitting such a verdict without a jury finding that the intentional killing was done *with malice aforethought* and, therefore, I dissent.

SEILER, Judge (dissenting).

I fully concur in the dissenting opinion of Judge Bardgett, but add this comment. Although the majority opinion does not so identify it, the instruction in question is that proposed for use in second degree murder cases by the committee of the Missouri Bar on pattern criminal instructions [for further identification see State v. Smart, 485 S.W.2d 90, (Mo.1972)]. As discussed by Judge Bardgett, I think that instruction is insufficient to instruct the jury on the crime charged in this case.

This is even more apparent when we examine what the state must prove, under the proposed pattern instructions, to establish second degree murder as compared to assault with malice aforethought, Sec. 559.-180, RSMo 1969, V.A.M.S. Both crimes require proof of malice aforethought, but only the instruction on the less serious offense requires that finding by the jury. The proposed instruction on assault with malice aforethought requires the jury to find the defendant acted with intent to kill *and* ". . . with malice aforethought —that is, intentionally and without just cause of excuse and after thinking about it beforehand for any length of time . . ." I do not see how the words "defendant intended to take the life of Annie Dale" can mean the act was done with malice aforethought in second degree murder, when the words "defendant acted with intent to kill" are insufficient to do so in the assault with malice aforethought instruction.

I realize and commend the utilization of uniform and pattern instructions which simplify and clarify the necessary elements for finding guilt or innocence by avoiding legalese which needs substantial explanation, but I am unable to grasp why a necessary element is omitted from a more se-

8

rious offense and retained in a lesser offense. It cannot be because the jury is unable to understand it in one but not the other. I feel that the above, or substantially similar language, is necessary for both crimes and should be included in both instructions.