**STATE of Missouri, Respondent,**

**v.**

**Ardell JONES, Appellant.**

**No. 57658.**

Supreme Court of Missouri,
Division No. 1.

Nov. 12, 1974.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, for respondent.

James C. Jones, Asst. Public Defender, St. Louis, for appellant.

WELBORN, Commissioner.

Appeal from judgment and sentence to 25 years' imprisonment on jury verdict of guilty to charge of murder in the second degree. (Notice of appeal filed prior to January 1, 1972)

On May 2, 1970, Leonard Gage was shot to death in an alley behind 917 North Card-

inal in St. Louis. A telephone installer who had seen the victim and the appellant quarreling earlier heard the first shot while he was working on a telephone pole nearby. He turned after the first shot and saw appellant fire several more shots at the victim. The telephone employee tapped onto the line and called the police. When police came to the scene, he gave a description of the man whom he saw doing the shooting. A short time later, appellant was apprehended by police and returned to the scene where the installer identified him. According to the arresting officer, when he apprehended appellant, the appellant said, "I just shot that dude. He had taken ninety dollars from me."

Police officers who interrogated appellant after his arrest testified that appellant told them that on the previous evening he had been at a party on Cardinal and $90 disappeared from his wallet. He suspected that Gage, who was also at the party, had taken it. The next day, he, carrying a .38 revolver, went out in search of Gage. He found Gage coming out of a barber shop and fired one shot into the ground. Gage told him to "back off"; that they could "get this straightened." They went to the apartment where the party had been held and talked with the party hostess but didn't settle anything. They left the apartment and walked into the alley. At that time "Jones says Gage started advancing on him and he fired approximately four shots at him." Another officer's version was that as the two walked toward the alley Jones said he warned Gage "not to do anything and [Gage] advanced towards him, at which time he fired several shots."

Testifying in his own behalf, Jones stated that he and Gage did go to the scene of the party and talk to the hostess about the loss of the money, but he did not conclude that Gage had taken it and left Gage talking to someone whom appellant had seen before but whose name he did not know. Jones denied that he shot Gage.

On this appeal, appellant contends that the trial court erred in failing to give a manslaughter instruction. Appellant relies on the testimony of the police officers that appellant stated that he shot Gage when Gage "advanced" toward him. Appellant contends that this was evidence of "a sudden, unexpected assault," which required an instruction on manslaughter, citing State v. Patterson, 484 S.W.2d 278 (Mo.1972), in support of this contention.

■ Appellant overlooks the requirement of Patterson that the "sudden, unexpected assault," required to reduce a homicide from murder to manslaughter, must "excite the passion beyond control." As Patterson points out by reference to State v. Clough, 327 Mo. 700, 705, 38 S.W.2d 36, 38 (1931):

"* * * It is not the assault or the provocation alone that reduces the grade of the crime, but it is the sudden happening or occurrence of the provocation so as to render the mind incapable of reflection and obscure the reason so that the elements of malice and deliberation necessary to constitute murder are absent, and therefore the crime is not murder, but manslaughter."

■ Here, the only evidence is that the victim "advanced" on the appellant. There is no evidence whatsoever of the state of mind produced in appellant. The only evidence is that he thereupon shot the victim. There is no evidence that the victim was armed or even that the advance was in a threatening manner. There is no evidence of how close the victim advanced toward appellant.

The evidence in this case did not require an instruction on manslaughter. State v. Hunter, 444 S.W.2d 392, 394–395 [3, 4] (Mo.1969); State v. Hubbard, 484 S.W.2d 224 (Mo.1972).

Appellant's second assignment of error is based upon his claim that the prosecutor in his closing argument improperly inferred that defense counsel held a personal opinion based on matters not in evidence that the defendant was guilty.

The assistant circuit attorney opened his final summation by saying: "No one is more convinced in this room about what your verdict will be than Mike Reap [defense counsel]." Defense counsel objected to the remark, stating "[T]hat's a conclusion." When the circuit attorney attempted to justify the remark, the trial court advised that it would rule on the objection without argument from the prosecutor and advised the prosecutor to proceed. Defense counsel sought no further relief. Somewhat later in the summation the prosecutor stated: "He can stand up here, Mr. Reap, and tell you what he wishes the evidence might be or might have been, but you are the jurors and you are sworn to abide by the facts. He spent a good portion of his time arguing about what happens after you return a verdict of guilty. Because he knows what you must do on these facts. And, I repeat, no one in this room would be more shocked with an acquittal than Mike Reap." No objection to these remarks was made by the defendant's attorney.

By his motion for new trial, appellant contended that the trial court erred in "overruling defense objection regarding speculative and improper comments by the Circuit Attorney on closing argument." In this court, the assignment is expanded to charge that the argument amounted to an inference that defense counsel believed his client guilty.

As above pointed out, the only objection at any time in the trial court to the argument now attacked was that it was a "conclusion." The assignment of error in the motion for new trial and in this court must be based upon an objection made in the trial court. State v. Thomas, 452 S.W.2d 160, 164 [9, 10] (Mo.1970); State v. Washington, 320 S.W.2d 565, 568 [7, 8] (Mo.1959). The objection here urged was not relied upon in the trial court either at the time of the remarks or in the motion for new trial. No ground for error based upon the objection now voiced has been laid. The grounds of error may not be asserted for the first time in this court.

State v. Sibley, 411 S.W.2d 187, 189 [4, 5] (Mo.1967).

Appellant's final assignment of error is based upon his objection to the introduction into evidence of two black and white photographs of the victim, taken at the morgue. Appellant contends that the photographs were unnecessary to prove, explain or corroborate any material facts and were admitted only to arouse the passion of the jury. The gruesome aspect of a photograph of the victim of a homicide does not preclude the use of the photograph in evidence when it has probative value. The nature of the wound which caused the death is recognized as one of the matters for which such photographs may be admitted in evidence. State v. Jackson, 499 S.W.2d 467, 471–472 [5–8]; State v. Wallace, 504 S.W.2d 67, 72 [9] (Mo.1973). The photographs here objected to showed the wounds on the head of the deceased. Such probative value distinguishes these photographs from those introduced in State v. Floyd, 360 S.W.2d 630 (Mo.1962), the only case cited by appellant which was reversed for error in the admission of photographic evidence. In Floyd, the court pointed out that the photograph there of the badly decomposed body of the victim was "neither needed nor offered * * * to show the nature and location of the injury * * *." 360 S.W.2d 633.

The trial court did not abuse its discretion in this case in permitting the photographs to be introduced in evidence. State v. Jackson; State v. Wallace, supra.

Judgment affirmed.

HIGGINS, C., concurs.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the court.

SEILER and HOLMAN, JJ., concur.

BARDGETT, P. J., concurs in result.