UNITED STATES of America, Plaintiff-Appellee,

v.

Kathleen Maude MUCKENSTRUM, a/k/a Kim Baker, Glenda Dale Hodges a/k/a Cindy Baker, James Marshall Reed and Jean Hertzka, a/k/a Pat Walker, Defendants-Appellants.

No. 74–3550.

United States Court of Appeals, Fifth Circuit.

July 3, 1975.

Norman S. London, L. J. Fleming, St. Louis, Mo., for Muckenstrum, Hodges, Reed & Hertzka.

E. David Rosen, Miami, Fla., for defendants-appellants.

Robert W. Rust, U. S. Atty., Donald L. Ferguson, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before BELL, DYER and SIMPSON, Circuit Judges.

BELL, Circuit Judge:

This appeal involves an interstate prostitution operation between Florida and South Carolina. Defendants Muckenstrum, Hodges, Reed, and Hertzka were convicted on one count of conspiracy to engage in interstate prostitution activities in violation of 18 U.S.C.A. § 1952, and on one count charging substantive violations of Section 1952 by using interstate facilities or traveling in interstate commerce to carry on prostitution. Additionally, procurer Reed was convicted on one count of inducing a

woman to engage in interstate prostitution activities in violation of 18 U.S.C.A. § 2422. We affirm.

■ Appellants' first contention is that a new trial is necessitated by the failure of the government to disclose that government witness Nevada Jean Robertson a/k/a Nevada Smith received subsistence payments prior to testifying. At trial, defense counsel learned for the first time that Robertson was and had been under the protection of U.S. marshalls, but no information was volunteered by the government or solicited by the defense concerning subsistence payments to Robertson.[1] Subsequent to trial, defense counsel discovered that Robertson had received approximately one thousand dollars in subsistence payments prior to trial.

No attack on the payments per se is sustainable since subsistence payments to government witnesses are authorized by Pub.L. 91–452, Title V, §§ 501–504, Oct. 15, 1970, 84 Stat. 933. *See* United States v. Howell, 5 Cir., 1975, 514 F.2d 710 (No. 74–2427, June 11, 1975). The gravamen of appellants' complaint is that defense impeachment of witness Robertson was severely hampered by the lack of knowledge concerning the payments. According to appellants, Robertson's testimony formed a substantial portion of the case against them, and the subsistence payments issue could have been used to discredit that testimony.

Assuming arguendo that it was error for the government to fail to disclose the subsistence payments despite the information not having been sought, we hold that the failure of the government to do so was harmless error in light of the overwhelming evidence adduced at trial against appellants. *See* Harrington v. California, 1969, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284. Besides Nevada Jean Robertson, the government produced Erlene Edwards, who testified that

[1]. At oral argument, government counsel (an assistant U.S. attorney), who also had handled the case at trial, stated that the existence of the payments was not consciously withheld from the defense as government counsel himself did not know of such payments. However, counsel conceded that the subsistence payments were within the ambit of his constructive knowledge as assistant U.S. attorney.

she was employed by Hertzka in operating a house of prostitution in Florence, South Carolina. Her duties included answering the door, getting the girls up in the morning and the taking of their receipts during the day for them. She identified defendants Hodges and Muckenstrum as being prostitutes at the house.

Melanie Ann Gordon testified that she travelled from Miami to Florence, South Carolina along with defendants Muckenstrum and Hodges, while in the employ of and at the instance of defendant Reed, to work as a prostitute at the Hertzka house. She testified that Muckenstrum and Hodges were also employed by Reed.

This direct testimony of witnesses was buttressed by documentary evidence. An FBI agent testified that a notebook had been found in Hertzka's possession at the time of her arrest and that the name "Jim" appeared in the book next to a telephone number later shown to be James Reed's Miami telephone number. Telephone records were introduced indicating numerous calls between James Reed's number in Miami and Hertzka's in South Carolina (listed under the alias Pat Walker).

Nevada Robertson testified that she was employed by Reed, that he sent her from Miami to the Hertzka house in Florence, and that she worked in the house as a prostitute. Thus her testimony was largely the same as that of witnesses Edwards and Gordon.

■ Appellants next urge reversal and a new trial based on Nevada Jean Robertson's recantation of her trial testimony at a post-trial hearing based upon a motion for new trial. Robertson did repudiate her grand jury and trial testimony. The government countered by producing witnesses impeaching Robertson's recantation. We have closely examined Robertson's post-trial testimony and find it untenable at best. Coupled with the overwhelming credible evidence against appellants and the extremely suspect nature of Robertson's recantation, the trial judge did not err in denying the motion

for a new trial. See United States v. Johnson, 5 Cir., 1974, 487 F.2d 1318, 1325.

■ Appellants also urge that a new trial should have resulted from the failure of the government to inform defense counsel of alleged threats and promises of leniency described by Robertson during the post-trial hearing. Federal agents testified at the hearing that no threats or promises had been made to Robertson. There is no merit whatever in this contention.

■ Appellants next contend that the government withheld statements of government witness Melanie Ann Gordon in violation of the Jencks Act (18 U.S.C.A. § 3500). Melanie Ann Gordon testified for the government at this trial and also in a subsequent trial giving rise to the appeal in United States v. Prince, 5 Cir., 1975, 515 F.2d 564, this day decided. The government produced an FBI report in the Prince trial of an interview with Gordon. It was not produced in this trial and thus the claim of a Jencks Act violation.

We have examined the FBI report in issue and find it is not Jencks Act material. As brought out at the post-trial evidentiary hearing, the FBI report did not quote Gordon directly, was not signed by her, and had not been seen by her prior to the post-trial hearing. See United States v. Blackburn, 5 Cir., 1971, 446 F.2d 1089; United States v. Roberts, 5 Cir., 1972, 455 F.2d 930. The trial judge did not err in refusing to grant the motion for new trial based upon this contention of appellants.

■ Appellants attack the jury instructions concerning reasonable doubt and the burden of proof. The alleged erroneous portion of the reasonable doubt charge is as follows:

Now, a reasonable doubt, as used in these instructions, means a doubt that is based on reason and common sense. Such doubt must be substantial rather than speculative, that is, a defendant is never to be convicted on mere suspicion or conjecture. Such doubt, how-

ever, must be a doubt that is reasonable and one which arises from the evidence or lack of it.

It does not mean a mere possible doubt or a speculative, imaginary or forced doubt, because everything relating to human affairs is open to some possible or imaginary doubt.

Appellants argue that this portion of the charge equates reasonable doubt with substantial doubt. We must view this instruction in the context of the whole charge. *See* Baker v. United States, 5 Cir., 1969, 412 F.2d 1069. Having done so, we disagree with appellants. We hasten to add, however, that the sentence instructing that a doubt must be substantial rather than speculative is confusing in that arguably it raises the burden from "reasonable doubt" to "substantial doubt" and would better be left unsaid.

 Appellants next contend that the burden of proof instruction used by the trial court impermissibly shifted the burden of proof to them. The portion of the charge highlighted by appellant is as follows:

The law does not require a defendant to prove his innocence or to produce any evidence. He may rely upon evidence brought out on examination of witnesses for the Government.

The court instructed the jury that the defendant is presumed innocent until proven guilty and on more than one occasion instructed that the burden of proving a defendant guilty beyond a reasonable doubt rests on the government. We find no error.[2]

 Appellant Hertzka contends that the admission into evidence of the notebook containing the hand-entered telephone number of defendant Reed, discovered incident to her lawful arrest, violated her Fifth Amendment right against self-incrimination. There was no

error in admitting this instrumentality of the crime. *See* United States v. Bennett, 2 Cir., 1969, 409 F.2d 888, 895–96; United States v. Hanon, 8 Cir., (en banc), 1970, 428 F.2d 101, 106–107. In Romanelli v. C. I. R., 7 Cir., 1972, 466 F.2d 872, 877 n.9, the Seventh Circuit pointed out the inapplicability of Hill v. Philpott, 7 Cir., 1971, 445 F.2d 144, relied on by appellants, where instrumentalities of the crime are involved (gambling paraphernalia).

We have examined the remaining arguments of appellants and find them to be without merit.

Affirmed.

---

**2.** This same argument was made in connection with a similar charge in Prince v. United States, *supra*, this day decided. The sentence that "He may rely upon evidence brought out on examination of witnesses for the govern-

ment." adds little to the charge and serves no purpose unless a defendant seeks such an instruction. It may, after all, be in the interest of the defendant rather than the contrary as is argued here.