Robert Jewel **YOUNG, Petitioner,**

v.

Donald **WYRICK, Warden, Missouri State Penitentiary, Respondent.**

No. 77–0746–W–3.

United States District Court,
W. D. Missouri, W. D.

May 11, 1978.

---

Ron Minkin, Los Angeles, Cal., Toby H. Hollander, Hollander & Platke, St. Louis, Mo., for petitioner.

John D. Ashcroft, Atty. Gen. and J. Michael Davis, Asst. Atty. Gen., Jefferson City, Mo., for respondent.

## MEMORANDUM AND ORDER DENYING PETITION FOR WRIT

RUSSELL G. CLARK, District Judge.

Petitioner, presently serving a fourteen year sentence at the Missouri State Penitentiary, has filed a petition for writ of habeas corpus through his retained counsel. He challenges his 1972 conviction for second degree murder after a jury trial in the Circuit Court for the City of St. Louis. Petitioner's appeal, see *State v. Young,* 510 S.W.2d 732 (Mo.App.1974), and his motion to vacate sentence under Missouri Rule 27.-26, see *Young v. State,* 547 S.W.2d 146 (Mo.App.1976), were unsuccessful. The petition for writ of habeas corpus is denied for the reasons stated herein.

In response to an earlier order, counsel for the parties presented a briefing schedule, and agreed to submit this action based upon the records compiled in the Missouri courts and the pleadings submitted during development of this action. At the request of counsel for petitioner, each party presented oral argument on May 1, 1978. During their oral presentations, the parties again stated that they wished to submit this case on the pleadings and records already filed. Accordingly, the Court deems this case to be fully and finally submitted. This Court has carefully reviewed the transcript of the trial of this case.

The Missouri Court of Appeals summarized the facts adduced at petitioner's trial in *State v. Young,* supra at 733–734, as follows:

On May 20, 1972 the deceased, Jimmy Lewis, and the defendant met at a carnival. An altercation ensued (defendant claims the deceased tried to rob him and struck him with a pistol) which ended when the defendant asked a policeman to escort the defendant to his car. The following Monday, May 22, defendant was in the Municipal Courts Building in Saint Louis City and saw Jimmy Lewis there. The defendant obtained a purse containing a gun from a companion (his sister-in-law) and left the building. Another companion, Michael Kirk, accompanied the defendant. While walking toward his car, the defendant saw Jimmy Lewis. The defendant took the gun from the purse and fired at Lewis. He began chasing Lewis back toward the Municipal Courts Building when Lewis stumbled and fell. The defendant ran closer to the

fallen man and fired two more shots as Lewis was trying to stand up. At the time these two final shots were fired, the defendant was about five to ten feet from Lewis and had been standing there for several seconds. Lewis collapsed after those shots were fired. Lewis was wounded four times, one of which was the cause of his death. The defendant proceeded into the Municipal Courts Building where, when confronted by police officers, he surrendered without resistance.

The defendant testified that Lewis was a member of the Fats Woods gang; had the nickname of "Killer"; had made threats against the defendant the night at the carnival; and, had again threatened defendant that Monday morning in the building. The defendant stated that he had received threatening phone calls the weekend of May 20 and 21 but did not know who the caller was. He proceeded to testify that he shot Lewis because he feared Lewis was after him and was going to kill him and this fear was reinforced by the threats, the reputation of Lewis and the fact that Lewis was wearing a long shirt which could conceal a pistol. (No weapon was found on or near Lewis' body).

During direct examination, the defendant stated that Lewis had followed him from the building. A videotape statement made by the defendant shortly after the shooting was played for the jury which indicated that Lewis had left the building before the defendant. The defendant attempted to explain this inconsistency by stating he was nervous at the time he made the videotaped statement.

As noted by petitioner, Michael Kirk also testified as follows:

Q. Okay. When did you first notice Jimmy Lewis?

A. When (petitioner) said, "They're coming behind me", "There, he's following us" or something to that effect.

Q. What happened then?

A. Well, (petitioner), you know, rather quickly he said "He got somethin' ", you know, like that, and then before I know (petitioner) was shooting. Tr. 239.

The state trial court instructed the jury on first and second degree murder, but refused to give instructions tendered by the defense on the lesser included offense of manslaughter and the issue of self-defense. The trial court's instruction on reasonable doubt contained the following language:

If, upon consideration of all the evidence, you have a reasonable doubt of the defendant's guilt, you should acquit, but a doubt to authorize an acquittal on that ground ought to be a substantial doubt touching the defendant's guilt and not a mere possibility of defendant's innocence. Tr. 295.

In this action, petitioner asserts:

1. that he was denied due process and a full and fair trial because the trial court failed to instruct the jury on manslaughter when there was sufficient evidence to support such an instruction; and the trial court applied an incorrect standard of law in denying the requested manslaughter instruction;

2. that he was denied due process and a full and fair trial when the trial court failed to give an instruction on the issue of self-defense;

3. that the trial court's instruction on reasonable doubt incorrectly defined that term, thereby denying petitioner due process; and

4. that the failure to instruct on manslaughter denied petitioner due process because it relieved the prosecution of its burden to prove all elements of second-degree murder beyond a reasonable doubt.

Respondent concedes that all of these issues have been presented to the Missouri Supreme Court. Thus, no issue concerning exhaustion of state remedies is presented. See, e. g., *Green v. Wyrick,* 414 F.Supp. 343 (W.D.Mo.1976).

The Court turns to petitioner's first and fourth claims, which relate to constitutional errors allegedly arising from the trial

court's failure to instruct on manslaughter. The Missouri Court of Appeals discussed Missouri law of homicide in its order denying petitioner's Rule 27.26 motion:

"In a case involving felonious homicide, the evidence may show only the intentional killing of a human being. This is manslaughter. V.A.M.S. § 559.070. If, in addition, the elements of premeditation and malice, but not deliberation, are shown, the offense is murder in the second degree. V.A.M.S. § 559.020. If, in addition, the element of deliberation is shown, the offense is murder in the first degree. V.A.M.S. § 559.010.

"It is the duty of the court to 'instruct the jury in writing upon all questions of law arising in the case which are necessary for their information in giving their verdict . . .' [citations omitted]. ". . . If, as in the *Sparf* case, supra [*Sparf v. U. S.*], 156 U.S. 51,. 64, 15 S.Ct. 273, 39 L.Ed. 343, . . . there has been *as a matter of law,* 'an entire absence of evidence upon which to rest a verdict of guilty of manslaughter,' the trial court could properly have instructed the jury only as to murder in the second degree." *Young v. State,* 547 S.W.2d 146, 148 (Mo.App.1976), quoting *State v. Ayers,* 470 S.W.2d 534 (Mo. banc 1971).

See also *State v. Anderson,* 515 S.W.2d 534 (Mo.1974).

Manslaughter is discussed more fully in *State v. Smart,* 328 S.W.2d 569, 574 (Mo. 1959):

[Manslaughter] may be defined as the killing of another intentionally, but in a sudden heat of passion due to adequate provocation and without malice. *State v. Burrell,* 298 Mo. 672, 252 S.W. 709, 711(2). "A provocation is deemed to be adequate, so as to reduce the offense from murder to manslaughter, whenever it is calculated to excite the passion beyond control. It must be of such a character as would, in the mind of an average just and reasonable man, stir resentment likely to cause violence endangering life, or as would naturally tend to disturb and obscure the reason and lead to action from passion rather than judgment, or to create anger, rage, sudden resentment or terror, rendering the mind incapable of reflection."

Accord, *State v. Jackson,* 496 S.W.2d 1 (Mo. 1973) (en banc); *State v. Hubbard,* 484 S.W.2d 224 (Mo.1972). Provocation sufficient to justify a manslaughter instruction is also discussed at length in *Smart:*

"Where the evidence is substantial in tending to show personal violence, that is, tending to show a battery—violence to a person—initially inflicted upon the slayer by the deceased at the time of the homicide, the general rule is that a manslaughter instruction is called for; and this is true though the evidence consists of testimony of the defendant alone. Violence to the person is the standard exacted by the law as affording the basis for the inference of that heat of passion which reduces the grade of the crime in a homicide case from murder to manslaughter." *State v. Smart,* supra, at 574, quoting *State v. Taylor,* 309 S.W.2d 621, 624 (Mo.1957).

In *State v. Jones,* 515 S.W.2d 504 (Mo. 1974), the defendant, charged with the murder of one Gage, told police officers that $90 had disappeared from his wallet at a party the night before the homicide. Defendant suspected that Gage, who had also been at the party, had taken it. The next day, petitioner, carrying a pistol searched for Gage and found him leaving a barber shop. Defendant fired one shot into the ground, whereupon Gage urged him to "back off" so that the two could settle their dispute. They went to the apartment where the party had been held, spoke with the hostess, but could not settle their dispute. They left the apartment and walked upon an alley. According to one officer, defendant said that Gage "started advancing on him"; another officer's version was that defendant warned Gage not to do anything and that Gage "advanced upon him". Defendant fired several shots at Gage, killing him. *Id.* at 505.

The Missouri Supreme Court ruled that on those facts, Jones was not entitled to a

manslaughter instruction because he failed to adduce any evidence showing a sudden unexpected assault rendering the mind incapable of reflection or obscuring reason to the point that the elements of malice and deliberation were absent. The Court stated:

> Here, the only evidence is that the victim "advanced" on the [defendant]. There is no evidence whatsoever of the state of mind produced in [defendant]. The only evidence is that he thereupon shot the victim. There is no evidence that the victim was armed or even that the advance was in a threatening manner. There is no evidence of how close the victim advanced toward [the defendant.]
> The evidence in this case did not require an instruction on manslaughter. *Id.* at 505.

The instant action presents facts very similar to those in *Jones,* supra. Petitioner testified that at the time he left the Municipal Courthouse, he was "followed" by Lewis. According to Michael Kirk, petitioner noticed that someone was following him, stated "He's got sometin'," turned, and fired several shots. Petitioner adduced no evidence that Lewis was armed—to the contrary, all the evidence adduced at trial showed that Lewis was unarmed, or that Lewis ever came closer than fifteen to twenty feet from where petitioner and Kirk were walking. Petitioner himself stated that when he became aware of Lewis' presence, he simply "turned around and started shooting." *State v. Young,* 510 S.W.2d 732, 735 (Mo.App.1974).

Even if the Court accepts petitioner's testimony that Lewis had threatened him when the two met earlier in the Court house, it will not support a finding of provocation sufficient to justify a manslaughter instruction under Missouri law. Neither threats, words of reproach, nor indecent provoking actions or gestures are sufficient to reduce murder to manslaughter. *State v. Mosley,* 415 S.W.2d 796 (Mo.1967); *State v. Taylor,* 309 S.W.2d 621 (Mo.1958). Petitioner's allegations that he and Lewis were involved in an altercation two days earlier offer no aid to his claim, because this incident, though tending to show a provocation, did not occur at the time of the homicide. *State v. Smart,* supra.

In short, this case is substantially identical with *State v. Jackson,* supra. Even if the evidence adduced by petitioner is taken in the light most favorable to him, the Court must conclude that he failed to make any showing that he was subjected to physical *violence at the time of the homicide* or that he felt the "heat of passion" necessary to support manslaughter under Missouri law. Under these circumstances, failure of the state trial court to give a manslaughter instruction cannot be characterized as constitutional error cognizable in a federal habeas corpus proceeding. *United Sates ex rel Parker v. Gray,* 390 F.Supp. 70 (E.D.Wis. 1975). See also *United States ex rel. Jacques v. Hilton,* 423 F.Supp. 895 (D.N.J.1976) (failure to give manslaughter instruction not constitutional error where facts showed that murder was intentional, "gangland style" execution); *Gist v. State of Oklahoma,* 371 F.Supp. 541 (E.D.Okl.1974) (failure to instruct on lesser included offenses not cognizable in federal habeas corpus proceeding.) Petitioner is not entitled to relief on this ground.

Petitioner also asserts that the trial court's failure to give a manslaughter instruction denied him due process because it relieved the prosecution of its burden to prove all elements of second degree murder beyond a reasonable doubt. He cites *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), in support of his assertion.

Under Missouri law, "all other kinds of murder at common law, not herein declared to be manslaughter or justifiable or excusable homicide, shall be deemed murder in the second degree." RSMo § 559.020.

Missouri case law is well settled that second degree murder is the willful, premeditated killing of a human being with malice aforethought, but without deliberation. See, e. g., *State v. Franco,* 544 S.W.2d

533 (Mo.1976); *State v. Chambers,* 524 S.W.2d 826 (Mo.1975); *State v. Anderson,* 515 S.W.2d 534 (Mo.1974); *State v. Jewell,* 473 S.W.2d 734 (Mo.1971); *State v. Bruton,* 383 S.W.2d 525 (Mo.1964). "Premeditation", as defined in Missouri law, means "thought of beforehand for any length of time." *State v. Marston,* 479 S.W.2d 481 (Mo.1972). "Willful" means "intentionally" or "knowingly". *Id.* "Malice" is the wrongful doing of a wrongful act without just cause. *State v. Booth,* 515 S.W.2d 586 (Mo.App.1974). It may be presumed from the intentional killing with a deadly weapon. *State v. Sherrill,* 496 S.W.2d 321 (Mo. App.1973).

At trial, the state court read the following instruction on second degree murder to the jury:

> Murder in the Second Degree is the killing of a human being feloniously, willfully, premeditatedly, and with malice aforethought but without deliberation. Tr. 294.

Earlier, the state court gave the jury the following definitions:

> [Willfully] . . . means intentionally, not accidentally.
>
> "Premeditatedly" means thought of beforehand for any length of time.
>
> "Malice", in its legal sense and as used in these instructions, does not mean mere spite, ill-will, hatred or dislike, as it is ordinarily understood, but it means that condition of the mind which prompts a person to intentionally take the life of another without just cause, justification or excuse, and signifies a state of disposition which shows a heart regardless of social duty and fatally bent on mischief.
>
> "Malice aforethought" means malice with premeditation.
>
> "Feloniously" means wickedly and against the admonition of the law. *Id.* at 292–93.

■ The prosecution's showing contained evidence bearing on every essential element of second degree murder. According to the prosecution's evidence, several minutes elapsed between petitioner's first encounter with Lewis at the Courthouse and the shooting. During that period, petitioner took the gun carried by his sister-in-law, showing that his acts were premeditated. The prosecution showed that petitioner fired at least two shots at Lewis, chased him, and then fired a third shot at close range. This evidence showed that petitioner acted willfully. By showing that petitioner intentionally used a deadly weapon to kill Lewis, the prosecution established a presumption that the killing was done with malice. As discussed more fully elsewhere in this opinion, the prosecution produced evidence showing that petitioner shot Lewis without provocation, a real or apparently real necessity to kill in order to save himself, or retreat.

■ Because the judge properly instructed the jury that the prosecution had the burden of showing every element of second degree murder, as that crime has been defined under Missouri law, and because the prosecution did in fact produce evidence tending to establish each element of the offense, the failure to give a manslaughter instruction cannot be construed as relieving the prosecution of its burden of proving second degree murder beyond a reasonable doubt. See *Mullaney v. Wilbur,* supra. Petitioner is not entitled to relief on this ground.

Petitioner's third allegation is that the trial court's failure to give a tendered instruction on self defense denied him a full and fair trial and due process.

Missouri law on self-defense is set forth in *State v. Jackson,* 522 S.W.2d 317, 319 (Mo.App.1975):

> Generally, to support a plea of self defense there must be 1) an absence of aggression or provocation on the part of the slayer . . . ; 2) there must be the presence of real or apparently real necessity to kill in order to save oneself . . . ; 3) reasonable cause must exist for belief of such necessity . . . ; and 4) the slayer must have done everything in his power consistent with his own safety to avoid the danger and avert the necessity, and he must retreat, if

retreat be practicable . . . [citations omitted.]

*Jackson* also states:

Something more than fear is required to justify such extreme conduct as the taking of another's life with a deadly weapon. Some affirmative action, gesture, or communication by the person feared indicating the immediacy of danger, the inability to avoid or avert it, and the necessity to use deadly force as a last resort must be present. *Id.* at 319.

And as noted in *State v. Blair,* 531 S.W.2d 755, 760 (Mo.App.1975):

[Under Missouri law], a defendant has no burden on the issue of self-defense. All that is required to raise the issue is that there be a prima-facie showing, from any evidence in the case, of the elements of self-defense . . .[1]

█ For petitioner to have been entitled to a self-defense instruction, the evidence adduced at trial, when taken in a light most favorable to him, had to show the presence of all four elements necessary to raise the defense. The trial record is wholly devoid of any evidence showing that petitioner "did everything in his power consistent with his own safety" to retreat before shooting Lewis. Despite petitioner's contrary assertion in his brief, no evidence at trial tended to show that petitioner had reasonable cause to believe that he was in *immediate* danger. Thus, the state court's failure to give a self-defense instruction cannot be construed as constitutional error cognizable under federal habeas corpus. See *United States ex rel. Parker v. Gray,* supra. Petitioner is not entitled to relief on this ground.

Finally, petitioner asserts that he was denied due process by the trial court's allegedly erroneous instruction on reasonable doubt. The challenged instruction reads:

You are further instructed that the Indictment contains the formal statement of the charge, but is not to be taken as any evidence of defendant's guilt.

The law presumes the defendant to be innocent and this presumption continues until it has been overcome by evidence of defendant's guilt beyond a reasonable doubt; and the burden of proving defendant's guilt rests with the State.

If, however, this presumption has been overcome by the evidence and the guilt of defendant established beyond a reasonable doubt, your duty is to convict.

If, upon consideration of all the evidence, you have a reasonable doubt of the defendant's guilt, you should acquit, but a doubt to authorize an acquittal on that ground ought to be a substantial doubt touching the defendant's guilt and not a mere possibility of defendant's innocence.

Petitioner challenges the equation of "reasonable doubt" and substantial doubt" in the last paragraph of the instruction on the ground that it shifts the burden of proving innocence to him.

█ Federal appellate courts have been nearly unanimous in condemning the use of instructions equating reasonable doubt and substantial doubt. See, e. g., *United States v. Wright,* 542 F.2d 975 (7th Cir. 1976); *United States v. Muckenstrum,* 515 F.2d 568 (5th Cir. 1975); *United States v. Atkins,* 487 F.2d 257 (8th Cir. 1973). Despite this condemnation, however, the cases have been unanimous in affirming federal convictions involving use of similar instructions.[2] The federal cases have held that a conviction will be upheld despite use of a "substantial doubt" instruction if, from the instructions as a whole, the jury understands reasonable doubt to mean a real or substantial doubt

---

**1.** *Blair* notes that self-defense negates the element of malice under Missouri law. The requirement that the defendant come forward with "some evidence" of self-defense, *see Mullaney v. Wilbur,* 421 U.S. 684, 701–02, 702 n. 30, 95 S.Ct. 1831, 44 L.Ed.2d 508 (1975), does not violate due process because the prosecution still carries the burden of persuasion on the self-defense issue by showing that the crime was committed with malice. *Frazier v. Weatherholtz,* 411 F.Supp. 349 (W.D.Va.1976).

**2.** See, e. g. *United States v. Conley,* 523 F.2d 650 (8th Cir. 1975); *United States v. Fallen,* 498 F.2d 172 (8th Cir. 1974). See also *United States v. Loman,* 551 F.2d 164 (7th Cir. 1977), and cases cited therein.

generated by the evidence or lack of it. See *United States v. Robinson,* 546 F.2d 309 (9th Cir. 1976); *United States v. Smith,* 468 F.2d 381 (3rd Cir. 1972). In habeas corpus challenges to particular instructions in state trials, all of the charges must be viewed together. *Cupp v. Naughten,* 414 U.S. 141, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973). Thus, if the instructions in this case, taken as a whole, properly conveyed the notion of reasonable doubt generated by the evidence, use of a "substantial doubt" charge will not result in reversal. See, e. g., *United States v. Smith,* supra.

The trial judge made the following charges to the jury in addition to the challenged instruction. When charging on the substantive elements of first and second degree murder, the judge stated:

> [T]he Court instructs you that if you find and believe from the evidence, beyond a reasonable doubt [that petitioner committed the crime of first degree murder] you will find [him] guilty of Murder in the First Degree . . ., and unless you so find each and all of the facts to be as stated in this instruction beyond a reasonable doubt, you will acquit . . . Tr. 293.

The judge gave an identical charge on the crime of second degree murder. *Id.* at 294. In the challenged instruction, the trial court properly stated that the defendant was presumed to be innocent and that the state carried the burden of proving his guilt beyond a reasonable doubt. The Court also notes that after the instructions were read to the jury counsel presented their closing arguments. Defense counsel made five references to the prosecution's burden of proof, including the following statement which is typical:

> [T]he state of mind of Robert Jewel Young, ask yourself what the State of

Missouri has proven to you beyond a reasonable doubt with regard to his state of mind, with regard to the relationship between Jimmy Lewis and Robert Jewel Young . . . *Id.* at 315.

■ The record demonstrates that the trial judge's instructions, when taken as a whole, properly conveyed the notion that reasonable doubt must be real doubt based upon the evidence. When the comments of defense counsel are added to the instructions, the Court must conclude that any error involved was not so "gross", *Taylor v. Minnesota,* 466 F.2d 1119, 1121 (8th Cir. 1972), or "conspicuously prejudicial," *United States ex rel. Cannon v. Maroney,* 373 F.2d 908, 910 (3rd Cir. 1967) as to deny petitioner due process or a fundamentally fair trial. *Maggitt v. Wyrick,* 533 F.2d 383 (8th Cir. 1976).[3] Petitioner is not entitled to relief on this ground.

On the basis of the state court records submitted in this case, and the briefs and argument of the parties, the Court has concluded that petitioner has failed to present claims entitling him to federal habeas corpus relief. Accordingly, it is

ORDERED that this petition for writ of habeas corpus should be and it is hereby denied.

---

**3.** The Court's ruling on this issue should not be construed as indicating general approval of the reasonable doubt instruction given in petitioner's trial. Federal appellate courts have condemned the use of "substantial doubt" instructions in federal criminal trials with increasing frequency, and the Seventh Circuit has warned the federal district courts within its jurisdiction that they face reversal if they use a "substan-

tial doubt" instruction. *U. S. v. Wright,* 542 F.2d 975 (7th Cir. 1976). These developments suggest that use of "substantial doubt" instructions in state criminal trials may soon be grounds for habeas corpus relief. Further examination of "substantial doubt" instructions by all courts in light of the growing case law appears to be warranted.