**David S. FRANCO, Jr., Petitioner,**

v.

**Donald W. WYRICK, Warden, Missouri State Penitentiary, Respondent.**

**No. 78–0412–CV–W–3.**

United States District Court,
W. D. Missouri, W. D.

Feb. 21, 1979.

Robert G. Duncan, Gladstone, Mo., for petitioner.

Philip M. Koppe, Asst. Atty. Gen., Jefferson City, Mo., for respondent.

## MEMORANDUM AND ORDER

RUSSELL G. CLARK, District Judge.

Petitioner, presently confined at the Missouri State Penitentiary, has filed a habeas corpus petition under 28 U.S.C. § 2254 through his retained counsel.[1] He challenges two convictions for second degree murder imposed after a single jury trial in the Circuit Court of Jackson County, Missouri in late 1974. A direct state appeal was unsuccessful. *State v. Franco*, 544 S.W.2d 533 (Mo.1976) (en banc), *cert. denied*, 431 U.S. 957, 97 S.Ct. 2682, 53 L.Ed.2d 275 (1977). This action followed.

This case presents two allegations:

1. Petitioner was denied due process when the state trial court refused to submit the lesser included offense of manslaughter to the jury because of a

---

1. In his Entry of Appearance notice, petitioner's counsel notes that he was petitioner's retained trial counsel, and that he continues his services without fee. The Court compliments counsel on his willingness to continue his serv- ices to his client by preparing and presenting this matter. Counsel's actions have significantly eased the burdens that might otherwise have arisen during the processing of this case.

Missouri rule that required petitioner to come forward with some evidence before such an instruction was required.

2. Petitioner was denied his right to confront and cross-examine witnesses when the state presented two witness who it knew would assert their privilege against self-incrimination.

During the processing of this litigation, the parties submitted briefs on each issue and agreed that no hearing was necessary on petitioner's due process claim. On the confrontation claim, however, the parties were divided as to the necessity for a hearing on the question of whether defense counsel properly objected to introduction of testimony from the witnesses who chose to exercise their Fifth Amendment rights. The parties have suggested that as a substitute for a hearing, the Court might utilize affidavits detailing the circumstances of defense counsel's objection to the allegedly improper testimony.

The Court has considered the parties' suggestions, and, in connection with its reading of the entire transcript, examined the testimony that now forms the basis for the confrontation claim. From this analysis, it is apparent that the factual circumstances surrounding the challenged testimony are clear on the face of the record and require no further hearing for development. A hearing is necessary only to determine if petitioner has deliberately bypassed state remedies on the confrontation claim. As is noted more fully below, however, the Court's determination of the merits of the confrontation claim obviates the need for any discussion of the bypass issue. Given these circumstances, the Court has determined that no further evidentiary hearings are required in this case and that the matter may be decided on the basis of the trial transcript, the opinions of the state appellate courts and the cogent written arguments of the parties.

The Court will discuss each claim in the petition separately.

## THE DUE PROCESS CLAIM

■ Petitioner first argues that he was denied due process when the state trial court refused to submit the lesser included offense of manslaughter to the jury because of a Missouri rule requiring petitioner to come forward with some evidence supporting submission of the charge before it was required.[2]

On February 6, 1974, petitioner was indicted on two counts of first degree murder, RSMo § 559.010, for the killings of Terry Ott and Linda Baber. Trial began on July 15, 1974. As summarized by the Missouri Supreme Court, the State presented the following evidence:

On January 2, 1974, petitioner possessed a key to a house owned by Sherry Edelbaum, with whom he had shared an intimate relationship. On January 31, 1974, the bodies of Ott and Baber were found under a pile of awnings in the Edelbaum house. Ott and Baber, who had lived together, were last seen alive on January 2, 1974; a forensic pathologist testified that the two had been dead for approximately one month at the time their bodies were found. The pathologist testified that the deaths of Ott and Baber were caused by gunshot wounds in the chest and massive hemorrhages resulting from the shots. Two .380 caliber bullets were recovered from Baber's body. These bullets matched a bullet known to have been fired from a .380 caliber Llama brand pistol owned by Ronald Palermo. The pistol was stolen from Palermo's home in mid-December 1973.

The state's evidence tended to show that petitioner owed Terry Ott approximately $2,000, and that some two or three months prior to January 2, 1974, a heated dispute had erupted between the two concerning repayment of the money.

At about 8:30 a. m., January 2, 1974, petitioner called Baber's mother in an at-

---

**2.** The state concedes that petitioner has exhausted state remedies on this claim. The issue was presented to and decided by the Missouri Supreme Court on direct appeal. Sub-mission of that claim to the state Supreme Court satisfied petitioner's burden of exhaustion. *See, e. g., Green v. Wyrick*, 462 F.Supp. 357 (W.D.Mo.1978).

tempt to reach Ott. Petitioner left the telephone number of the Edelbaum house with Baber's mother as a number where he could be reached. A person who lived near the Edelbaum house testified that he heard sounds like exploding "firecrackers" sometime between 9:00 a. m. and 1:15 p. m. on January 2, 1974.

Sherry Edelbaum met petitioner within two blocks of her home as she returned from an art class at 12:30 p. m., January 2, 1974. Petitioner stopped her and invited her to join him for lunch. Edelbaum accepted, and drove to her house. Petitioner followed in his car. Edelbaum started into her house to leave her art supplies, but was dissuaded by petitioner, who suggested that she leave them in the car and that they go immediately to lunch.

As petitioner and Edelbaum drove to lunch, Edelbaum noticed some Indian jewelry in petitioner's car. She expressed admiration for a particular belt buckle which had a missing stone, and petitioner gave it to her. At trial, Ott's brother testified that he had owned the buckle and given it to his brother before January 2, 1974. While in petitioner's car, Edelbaum also noticed a box in the back seat that smelled like marijuana. Petitioner refused to answer questions concerning the contents of the box. Ott was reputed to be a dealer of marijuana.

There was testimony that Ott regularly carried large amounts of money on his person. When his body was discovered, no cash was found. Between January 2 and January 31, 1974, petitioner went to California with several other persons. During that trip, petitioner was observed to possess large amounts of cash.

On the date that the victims' bodies were discovered, police officers discovered Baber's purse partially concealed among the rafters in the basement of the Edelbaum house. Petitioner later told police officers that he had never touched Baber's purse although he had been with the two several times prior to their deaths. Police experts removed a latent fingerprint matching that of petitioner's left ring finger from the

purse discovered in the basement. *State v. Franco*, 544 S.W.2d 533, 535–36 (Mo.1976) (en banc).

At the close of the evidence, the trial judge gave the following instructions to the jury:

As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about the 2nd day of January, 1974, in the County of Jackson, State of Missouri, the defendant caused the death of Terry C. Ott by shooting him, and

Second, that the defendant intended to take the life of Terry C. Ott, and

Third, that the defendant considered taking the life of Terry C. Ott and reflected upon this matter coolly and fully before shooting him,

then you will find the defendant guilty under Count I of murder in the first degree.

However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of the foregoing, you must find the defendant not guilty under Count I of that offense. . . . .

[M.A.I.–CR Instruction 6.02]

As to Count I, if you do not find the defendant guilty of murder in the first degree, then you must consider whether under the evidence in this case he is guilty of murder in the second degree. If you find and believe from the evidence beyond a reasonable doubt:

First, that on or about the 2nd day of January, 1974, in the County of Jackson, State of Missouri, the defendant caused the death of Terry C. Ott by shooting him, and

Second, that the defendant intended to take the life of Terry C. Ott,

then you will find defendant guilty under Count I of murder in the second degree.

However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of the foregoing, then

you must find the defendant not guilty under Count I of that offense. . . .

[M.A.I.–CR Instruction 6.06]

If you do not find and believe from the evidence, beyond a reasonable doubt, that the defendant shot and killed Terry C. Ott, you must find the defendant not guilty under Count I of the Indictment.

[M.A.I.–CR Instruction 3.02]

One of the issues under Count I is whether the defendant was present at the time and place the offense is alleged to have been committed. On that issue you are instructed as follows:

1. The State has the burden of proving beyond a reasonable doubt that the defendant was present at the time and place the offense is alleged to have been committed.

2. If the evidence in this case leaves in your mind a reasonable doubt regarding the defendant's presence at the time and place the offense is alleged to have been committed, then you must find the defendant not guilty under Count I.

[M.A.I.–CR Instruction 3.20] *Tr.*, 586–88, 591–92.

The trial court gave identical instructions with respect to Count II, which charged petitioner with the murder of Linda Baber. *Id.* at 589–90, 592. The court also gave a circumstantial evidence instruction:

Circumstantial evidence is the proof of facts or circumstances that give rise to a reasonable inference of other facts that tend to show the guilt or innocence of the defendant. Circumstantial evidence should be considered by you, together with all the other evidence in the case, in arriving at your verdict.

You should not find the defendant guilty unless the facts and circumstances proved are consistent with each other and the guilt of the defendant, and inconsistent with any reasonable theory of his innocence.

[M.A.I.–CR Instruction 3.42] *Id.* at 591.

On direct appeal, petitioner argued that the trial court erred in failing to give a manslaughter instruction. He asserted "that the entire case . . . was circumstantial evidence which introduced nothing that would indicate the reason the homicide occurred, or the facts and circumstances surrounding it. In the absence of such affirmative evidence, * * * a manslaughter instruction must be given as a matter of law." *State v. Franco*, 544 S.W.2d 533, 536 (Mo.1976) (en banc). The Missouri Supreme Court rejected this assertion, holding that state law did not require submission of lesser included offenses to the jury in first degree murder cases based solely upon circumstantial evidence unless warranted by the circumstances in the particular case. *Id.* at 537, *quoting State v. Holland*, 354 Mo. 527, 189 S.W.2d 989 (1945), *and citing State v. Cuckovitch*, 485 S.W.2d 16 (Mo.1972) (en banc).

In this action, petitioner challenges the Missouri Supreme Court's ruling on the theory that the rule announced by that Court relieved the prosecution of showing that petitioner acted deliberately and with malice while forcing petitioner to affirmatively show that he acted without deliberation or malice. According to petitioner, such a shifting of the burden of proof violates due process. *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

In *Young v. Wyrick*, 451 F.Supp. 576 (W.D.Mo.), *aff'd mem.*, No. 78–1510 (8th Cir., November 17, 1978), this Court discussed Missouri's law of homicide at length. Under Missouri law, evidence showing only the intentional killing of a human being is defined as manslaughter. RSMo § 559.070. As noted in *State v. Smart*, 328 S.W.2d 569, 574 (Mo.1959), however, Missouri law defines manslaughter more completely as the intentional taking of a human life, "in a sudden heat of passion due to adequate provocation and without malice." *Accord, State v. Jackson*, 496 S.W.2d 1 (Mo.1973) (en banc); *State v. Hubbard*, 484 S.W.2d 224 (Mo.1972). Missouri case law is well settled that second degree murder is the willful, premeditated killing of a human being with malice aforethought but without delibera-

tion. *See, e. g., State v. Chambers*, 524 S.W.2d 826 (Mo.1975); *State v. Anderson*, 515 S.W.2d 534 (Mo.1974); *State v. Jewell*, 473 S.W.2d 734 (Mo.1971); *State v. Bruton*, 383 S.W.2d 525 (Mo.1964).

"Premeditation", as defined in Missouri law, means "thought beforehand for any length of time." *State v. Marston*, 479 S.W.2d 481 (Mo.1972). "Willful" means "intentionally" or "knowingly". *Id.* "Malice" is the wrongful doing of a wrongful act without just cause. *State v. Booth*, 515 S.W.2d 586 (Mo.App.1974). It may be presumed from the intentional killing with a deadly weapon. *State v. Sherrill*, 496 S.W.2d 321 (Mo.App.1973). *Young v. Wyrick, supra*, at 582.[3]

In *Young*, this Court held that where the trial court's instructions properly state that the prosecution has the burden of proving each element of second degree murder, and the prosecution presents evidence tending to prove each element of that crime, the failure to give an instruction on manslaughter cannot be construed as relieving the prosecution of its burden of proving second degree murder beyond a reasonable doubt. *Id.*, citing *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975).

As set forth more fully above, the trial court's instructions properly defined first and second degree murder under Missouri law.[4] And, as stated by the Missouri Supreme Court:

The jury in the instant case could reasonably infer from the concealment of the victims' bodies that they were intentionally killed under circumstances that could not be deemed justifiable or excusable, and that their deaths were not suicidal or accidental. The combined testimony of the pathologist and ballistic expert am-

ply supported a finding by the jury that the victims' deaths were caused by a deadly weapon used upon vital parts of their bodies. Further, the jury could reasonably infer from the collective impact of the following evidence that appellant committed the homicides in question: (1) appellant's access to the basement of the dwelling house where the victims' bodies were found; (2) appellant's possession of an Indian belt buckle on the afternoon of January 2, 1974, which belonged to victim Terry C. Ott; (3) the presence of appellant's fingerprint on a purse belonging to Linda Kay Baber, which was partly concealed on a rafter in the basement where the victims' bodies were discovered; (4) appellant's presence on January 2, 1974, in the immediate area of the dwelling house where the victim's bodies were eventually found almost a month later; and (5) the fact that appellant left a message for victim Terry C. Ott to call him on the morning of January 2, 1974, at the dwelling house where the victims' bodies were found.

*State v. Franco*, 544 S.W.2d 533, 536 (Mo. 1976) (en banc).[5] It should also be noted that the prosecution presented evidence linking petitioner to the theft of the murder weapon.

■ After an independent examination of the transcript, the Court has concluded that the Missouri Supreme Court's analysis of the prosecution's evidence is correct. The prosecution presented evidence bearing on every element of second degree murder and evidence linking petitioner to the scene of the crime and the murder weapon. Under these circumstances, the prosecution's burden of establishing second degree murder was satisfied. *Cf. Patterson v. New*

---

**3.** Missouri defines first degree murder, the crime charged in the indictment against petitioner, *in such a fashion as to include the elements of second degree murder and the additional element of deliberation. Young v. Wyrick, supra*, at 580, *quoting Young v. State*, 547 S.W.2d 146, 148 (Mo.App.1976).

**4.** It should be noted that petitioner does not challenge the sufficiency of the instructions actually given to charge first and second degree

murder. The Court also notes that these instructions are pattern instructions compiled under supervision of the Missouri Supreme Court. Under Missouri Rule 20.02, failure to give the appropriate pattern instructions is error.

**5.** Petitioner herein was the appellant in the *Missouri Supreme Court. For convenience, the* Court has retained the appellation used by the Supreme Court in this excerpt.

*York,* 432 U.S. 197, 206, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977). The Court has also concluded that the trial court's instructions, which correctly defined the elements of second degree murder, stated the prosecution's burden to prove petitioner's presence at the scene and the prosecution to prove all of the foregoing beyond a reasonable doubt, and which properly stated the jury's duties in the examination of circumstantial evidence, were correct. Petitioner's claim that he was denied due process by an alleged shifting of the burden of proof must therefore fail. *Young v. Wyrick, supra.*

Petitioner is not entitled to relief on this claim.

## THE CONFRONTATION CLAIM

Petitioner also argues that he was denied his right to confront and cross-examine witnesses when the state presented two witnesses who it knew would assert their privilege against self-incrimination.

At trial, the prosecution called John Ewing as a witness. Before Ewing could testify, however, the prosecution asked to meet with defense counsel and the Court in chambers. Ewing's attorney also appeared at the conference. He stated that he had advised his client to claim Fifth Amendment privilege on all questions asked by counsel except his name. Counsel then indicated their intentions concerning the questioning of Ewing:

MR. DAKOPOLOS [prosecutor]: I intend to ask him if he ever owned in November or December of '73, owned or possessed a llama .380 pistol and did he in the accompaniment of Ron Palermo go to the area of 157th and State Line and fire the automatic and that's the extent of my questioning but, of course, I have no control over what cross examination Mr. Duncan may make.

MR. DUNCAN [defense counsel]: It's awful hard to cross examine a guy that hasn't said anything. I might ask him if he owned the gun in January.

MR. HARDY: [Counsel for Ewing]: You are not going to try to impeach him, are you?

MR. DUNCAN: No, I'm not going to get deep.

MR. DAKOPOLOS: I intend to further ask him what became of that gun.

*Tr.,* 243. Ewing's counsel stated that even this questioning might implicate his client in criminal activity. After this discussion, the trial judge stated that he would consider challenges to the propriety of Ewing's exercise of the privilege on a question by question basis. Ewing took the stand, and refused to give any information on direct or cross examination. *Id.* at 246–47.[6]

Later, the prosecutor called Robert Baber, brother of Linda Kay Baber. Baber claimed the Fifth Amendment privilege when asked if he knew the nature of Terry Ott's business, whether Linda Baber was involved in that business, whether he had received any marijuana from Ott, whether he knew if Ron Palermo was involved with drugs, whether he knew if David Franco was involved with drugs, and, on cross examination, whether Ott had moved north of the river because of a prior robbery, whether Tom Ott was the source of the marijuana sold by Terry Ott, and whether Terry Ott had a job. *Tr.,* 349–50, 356, 365. Baber responded fully to other questions and was subjected to extensive cross examination.

In the Missouri Supreme Court, petitioner argued that "the trial court erred in allowing witnesses Baber and Ewing to testify in that the court and state knew that said witnesses would refuse to testify under protection of the Fifth Amendment and said refusal was highly prejudicial to the defense and denied the defendant his right to cross-examination." *State v. Franco,* 544 S.W.2d 533, 537 (Mo.1976) (en banc). The Missouri Supreme Court refused to consider the claim, however, on the ground that it had not been properly preserved for review. *Id.*

---

**6.** During this conference, the prosecutor stated that he thought that Ronald Palermo and John McKay would also claim their Fifth Amendment privilege. *Tr.,* 245. Neither witness did so when called, however.

Petitioner renews his confrontation claim in this Court, but based upon the decision of the Missouri Supreme Court, respondent argues that petitioner's failure to lodge a proper objection at trial compels a finding that he has deliberately bypassed state remedies on this claim. *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Petitioner argues that he did object but that the objections were not recorded.

The Court has carefully examined the positions of the parties on this issue and carefully analyzed the merits of petitioner's confrontation claim. The Court has determined that petitioner is not entitled to relief on the merits of his confrontation claim. This determination makes it unnecessary to reach the bypass argument tendered by the state. Accordingly, the Court will not address the bypass claim and will assume *arguendo* that petitioner's counsel properly objected to the use of testimony from Robert Baber and John Ewing.

In *Douglas v. Alabama*, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965), cited by petitioner in support of his confrontation claim, a crucial prosecution witness exercised his Fifth Amendment privilege and refused to testify. The prosecution capitalized upon this refusal and read a statement made by the witness implicating the defendants to the jury. The defendants could not cross examine the witness on the contents or the circumstances surrounding the making of his written statement. The Supreme Court held that these facts constituted a violation of the defendants' Sixth Amendment right to confrontation.

■ The Eighth Circuit has discussed confrontation problems of this type at length:

The right of confrontation includes the right to cross-examine adverse witnesses. *Pointer v. Texas*, [380 U.S. 400, 404, 85 S.Ct. 1065, at 1068, 13 L.Ed.2d 923 at 926 (1965)]. However, when a conflict arises between a witness's proper exercise of his Fifth Amendment privilege against self-incrimination and the defendant's right to confront witnesses, a proper balance must be struck. In striking this balance, courts have considered the nature and significance of the witness's testimony to assess the probability of resultant prejudice to defendant because of the inability to fully cross-examine the witness. If the subject upon which the witness refuses to testify relates to matters elicited by the Government on direct examination and the defendant's counsel is prejudicially hampered in his ability to assail the truthfulness of the direct testimony, the court should partially or totally strike the witness's testimony. [Citations omitted.] If the witness's refusal to testify merely precludes inquiry into an area relating to a collateral matter, such as the credibility of the witness, the defendant has suffered no prejudice and the witness's other testimony may be admitted.

*United States v. Gould*, 536 F.2d 216, 222 (8th Cir. 1976). Under this test, the key inquiry is whether the defense has been foreclosed from cross-examining a witness on matters material to the prosecution's case. If so, a constitutional violation has occurred. If not, the defendant's right to confront has not been violated.

■ With respect to Ewing, it should be noted that neither the prosecution nor the defense succeeded in obtaining any information from him.[7] The prosecution did not use Ewing to admit inculpatory substantive evidence indirectly without affording defendant an opportunity to cross-examine the source of the evidence. *See Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968); *Barber v. Page*, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968). The prosecution did not use Ewing's silence as a method of introducing his prior inculpatory statements. Further, an examination of the testimony of Ronald Palermo show that virtually all of the evidence that the parties sought to obtain from Ewing was in fact obtained from Pal-

---

7. Petitioner does not challenge the propriety of Ewing's invocation of his Fifth Amendment privilege.

ermo, who was available for cross-examination. *Tr.*, 254–259. Petitioner's counsel vigorously questioned Palermo on these matters. *See, e. g., id.* at 283. Under these circumstances, the Court must conclude that petitioner's right to cross-examine witnesses on the information that the parties originally attempted to obtain from Ewing was not prejudiced by Ewing's unchallenged invocation of his Fifth Amendment privilege against self-incrimination.

Similar considerations obtain with respect to the testimony of Baber. On questions relating to Baber's invocation of the Fifth Amendment privilege, the parties were able to obtain equivalent information from their questioning of Ronald Palermo. And, as with Ewing, the prosecution made no attempt to use Baber's partial silence to place inculpatory material before the jury. The Court must find that petitioner's right to cross-examine witnesses on the information that the parties attempted to obtain from Baber was not prejudiced by his unchallenged invocation of his Fifth Amendment privilege against self-incrimination.

In making these determinations, the Court is mindful of the possible effects that follow from any invocation of the Fifth Amendment privilege by a witness at trial. *See, e. g., United States v. Demchak,* 545 F.2d 1029, 1032 (5th Cir. 1977) (where Fifth and Sixth Amendment rights may conflict, preferred procedure is an in camera hearing to demonstrate the degree to which cross-examination would be impaired by invocation of the Fifth Amendment privilege). Nonetheless, any speculation that the jury may have had about the invocation of the Fifth Amendment privilege by the witnesses, particularly with respect to questions concerning the involvement of Ronald Palermo, Linda Kay Baber, and Terry Ott with transactions in controlled substances was counteracted by Ronald Palermo's own testimony concerning his involvement with drugs and his statements, based on personal knowledge, concerning the involvement of Terry Ott, Linda Baber and petitioner in these matters.

Under these circumstances, the Court must find that petitioner's right to cross-examine Ewing and Baber was not materially prejudiced by their invocation of the Fifth Amendment privilege against self-incrimination.

Petitioner is not entitled to relief on the merits of this claim. It is therefore unnecessary to reach the state's contention that petitioner deliberately bypassed state remedies on the issue.

Because the parties have agreed that the due process issue may be determined without an evidentiary hearing and because the Court's assumptions concerning the confrontation claim make a hearing on that issue unnecessary, this petition may be denied without further proceedings.

Accordingly, for the reasons stated above, it is

ORDERED that this petition for writ of habeas corpus should be and it is hereby denied.